Barbara J. MONRAD and Carol Ann
Crone, Plaintiffs–Appellees,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION as Receiver for Indepen-
dence Bank, Defendant–Appellant.

No. 93–56221.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1995.

Decided Aug. 7, 1995.

Alfred Klein, Glendale, CA, for plaintiffs-appellees.

Maria B. Valdez, F.D.I.C., Washington, DC, for defendant-appellant.

Before: BROWNING and BEEZER, Circuit Judges, and HAGGERTY,[1] District Judge.

HAGGERTY, District Judge:

In this action, appellees seek damages in the form of severance pay as former employees of the now-defunct Independence Bank from the Federal Deposit Insurance Corporation (FDIC), in its capacity as receiver for the bank. The district court granted appellees' motion for summary judgment and awarded them severance pay, attorney fees, and costs. FDIC appeals, contending that severance pay is not owed because it properly repudiated the contracts of all bank employees in accordance with its statutory authority. FDIC also asserts that the district court abused its discretion in awarding penalties and attorney fees. We affirm in part and reverse in part.

I.

Appellee Carol Crone began working for Independence Bank in 1966. Appellee Barbara Monrad began working for the bank in 1979. Both held various positions with the bank, and each was an officer as of January 30, 1992. On that date the Superintendent of Banks of the State of California took possession of the bank. On the same day, the Federal Deposit Insurance Corporation was appointed receiver of the bank (FDIC–R).

FDIC–R's bank liquidation specialist conducted a review of the bank contracts and determined that certain contracts, including appellees' severance pay contracts, were burdensome. By letters dated February 4, 1992, FDIC–R informed Monrad and Crone that, pursuant to 12 U.S.C. § 1821(d), it was disaffirming and repudiating any agreement the bank had with them. FDIC–R also advised appellees of their right to file a receivership claim.

On March 11, 1992, each appellee timely filed receivership claims for severance pay based on what they believed to be the bank's policy of paying two weeks of severance pay for each year of service. The bank's personnel policy manual addressed severance pay:

> Employees who are involuntarily terminated from the bank may or may not be entitled to severance pay, depending on the circumstances. Each instance will be handled on a case by case basis. Top corporate officials and the Director of Human Resources will be responsible for all decisions.

Appellees asserted that in addition to the manual, the bank also had an "informal poli-

---

1. Honorable Ancer L. Haggerty, United States District Court for the District of Oregon, sitting by designation.

cy" of two weeks of severance pay for each year of service. The sole written reference to the otherwise unwritten policy was in a two sentence memorandum from Judy D'Avad, the officer responsible for enforcing the bank's personnel policies, to the bank's vice president dated January 5, 1989. The memorandum stated:

> For official, unofficial policy, I am recommending two weeks pay for each year of employment. If you concur, please sign and return memo.

The memo was signed by the vice president. The memorandum referred to "official/unofficial" policy because the bank's executive vice president did not want the policy to apply to employees discharged for cause and therefore, did not want the policy in the employee personnel manual.

Crone also filed a claim based on a separate retention and severance agreement which she and the bank entered into on May 1, 1991. This agreement called for twelve months compensation based on her average monthly salary if any of several triggering events occurred, including, but not limited to: (1) a transfer of all or substantially all of the assets of the bank; (2) a change of ownership of at least 51% of the outstanding shares of voting securities of the bank; or (3) a termination, other than for cause.

FDIC–R denied Monrad's claim on July 1, 1992, and Crone's claim on January 7, 1993. The denial letters stated: "Severance pay was not a guaranteed benefit pursuant to the Bank's Employee's Policies and Procedures Manual. Therefore, such claims are not priority wage claims, nor are they valid general creditor claims."

In August 1992, Monrad exercised rights under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), and filed suit against FDIC–R seeking severance pay. The suit was amended to include Crone's claim in March 1993.

Both sides sought summary judgment from the district court. Appellees asserted that because FDIC was appointed by the California Superintendent of Banks, the court was required to apply state law, which mandated severance pay. Appellees also contended that the reasons FDIC provided for denying their claims were patently invalid, rendering the denials arbitrary and capricious.

FDIC argued that its repudiation was timely and that no rights to severance pay existed at the time of its receivership appointment.

On June 16, 1993, the district court granted summary judgment to Monrad in the amount of $24,325 for two weeks wages for each year of employment, and $5,416.67 in late payment penalties. Similarly, Crone was awarded $90,000 under the two weeks wages for each year calculation as applied to Monrad, and $7,500 in late penalty payments. Crone also was awarded summary judgment in the amount of $90,000 for her claim under the Retention and Severance Agreement she had with the bank. No opinion was issued in regard to these rulings. On September 22, 1993, the court awarded Monrad and Crone fees and costs in the amount of $27,317.50. FDIC filed a timely appeal of the district court's decisions.

## II.

A grant of summary judgment is reviewed *de novo*. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c): the appellate court must determine, after viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Id.* at 1130. The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Id.* at 1131.

This court reviews the award or denial of attorney fees for abuse of discretion. *In re Washington Pub. Power Supply Sys. Securities Litigation*, 19 F.3d 1291, 1296–97 (9th Cir.1994). Any element of legal analysis and statutory interpretation in the trial court's decision is reviewed *de novo*.

*Notrica v. FDIC*, 2 F.3d 961, 964 (9th Cir. 1993).

### III.

Appellant FDIC contends that the district court's ruling violates 12 U.S.C. § 1821(e)(1), which authorizes FDIC–R to repudiate all burdensome contracts, including those agreements regarding severance pay. The pertinent portion of the statute states that a receiver may disaffirm or repudiate a contract if the receiver, in its discretion, determines that the performance of the contract would be burdensome, and that the disavowal would promote the orderly administration of the failed bank's affairs. *See Resolution Trust Corp. v. Management, Inc.*, 25 F.3d 627, 631 (8th Cir.1994); *Howell v. FDIC*, 986 F.2d 569, 571 (1st Cir.1993).

Appellees concede that FDIC–R possessed a statutory right to repudiate contracts, but argue that the power to repudiate should not be absolute, and that the repudiation in this case was arbitrary and should be invalidated. Appellees claim they are entitled to actual damages under 12 U.S.C. § 1821(e)(3)(C)(i), and, under California law, to severance pay.

■ Appellees contend that the repudiation was arbitrary and capricious because FDIC–R failed to assert as reason for denying the claims that the severance contracts were burdensome, but instead gave other specific reasons for denial of the claims. This contention is unsupported by the facts of the case and is meritless.

The receiver is not required to issue a formal finding that a contract or lease is burdensome. *1185 Ave. of Americas Assoc. v. Resolution Trust Corp.*, 22 F.3d 494, 498 (2d Cir.1994). Moreover, FDIC–R repudiated the contracts upon being appointed as receiver in February 1992. Each plaintiff received a February 4, 1992 termination letter advising that the FDIC–R was repudiating and disaffirming any contract to which the bank was a party. Although FDIC–R did not use the word burdensome, the termination letters specifically referred to 12 U.S.C. § 1821(e). The receiver acted within its discretion to disaffirm or repudiate a contract after determining that the performance of the contract would be burdensome. *Howell*, 986 F.2d at 571.

■ Accordingly, the question presented is not whether FDIC–R has the authority to repudiate burdensome contracts within a reasonable time after being appointed receiver, or whether this authority preempts state laws. Instead, at issue is the extent of FDIC's liability for damages after it repudiates—specifically, whether FDIC is liable for damages after repudiating severance pay and termination contracts. *See Office and Professional Employees Intern. Union, Local 2 v. FDIC*, 27 F.3d 598 (D.C.Cir.1994) [hereinafter *OPEIU*]; *Howell*, 986 F.2d at 571.

In *OPEIU*, the D.C. Circuit Court held that FDIC had the authority to repudiate burdensome contracts, but that it was liable for damages resulting from repudiated severance pay contracts. In *Howell*, the First Circuit held that the FDIC's repudiation of severance agreements was valid under § 1821(e), but that the FDIC was not liable for damages.

Therefore, once the FDIC properly repudiates a contract, the remaining issue is whether the claimant has suffered damages of the type allowed to be compensated by statute.[2] *Atlantic Mechanical, Inc. v. RTC*, 772 F.Supp. 288, 292 (E.D.Va.1991), *aff'd without op.* 953 F.2d 637 (4th Cir.1992); *Bayshore Executive Plaza Partnership v. FDIC*, 943 F.2d 1290, 1292 (11th Cir.1991).

---

**2.** 12 U.S.C. § 1821(e)(3) provides in relevant part:

 (3) *Claims for damages for repudiation*
  (A) ... the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—
   (i) limited to actual direct compensatory damages; and
   (ii) determined as of—

    (I) the date of the appointment of the conservator or receiver; ...
  (B) No liability for other damages
  For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—
   (i) punitive or exemplary damages;
   (ii) damages for lost profits or opportunity; or
   (iii) damages for pain and suffering.

■ Appellees' assertion that their recoverable damages are to be determined under California law is misplaced. "[W]hen a federal statute addresses the issue of law in contention, the federal statute governs the dispute, despite any federal or state common law that might suggest another result." *Bayshore*, 943 F.2d at 1292.

In *O'Melveny & Myers v. FDIC*, —— U.S. ——, ——, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994), the Supreme Court said:

> It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise.

FDIC urges this court to follow *Howell* in concluding that its liability for "actual direct compensatory damages" does not include severance pay. Further, FDIC contends that its liability, if any, is limited to those actual direct compensatory damages that were capable of determination as of the date of its appointment as receiver. FDIC asserts that the amount of severance pay to which Monrad and Crone may have been entitled was not capable of determination on January 30, 1992, the date on which the receiver was appointed.

In *Howell*, the First Circuit held that severance pay agreements negotiated by four bank officers with a savings and loan that failed less than a year later did not entitle the officers to damages under § 1821(e). The court stated:

> [T]he statutory language—"actual direct compensatory damages"—does not quite embrace the payments promised by the officers' severance agreements. [The] officers may, or may not, have suffered injury by remaining at the bank, depending on what options they had in the past that are not available now. Conceivably, they suffered no damage at all; conceivably, their actual damages from staying at [the bank] exceed the amounts stipulated in the agreements. The point is that severance

payments of this class do not comprise actual damages.

*Howell*, 986 F.2d at 573.

The D.C. Circuit re-examined the issue more recently, however, and concluded that the *Howell* court overlooked that:

> an employer's promise to make severance payments is part of the consideration of the employment contract.... So viewed, the injury occurs when the contractual right is repudiated, and it matters not whether the executives would have had other options when they entered into the contract or whether they could find comparable jobs after termination.... [T]he promised severance payment was not a provision for liquidated damages since the bank did not breach the employment contract by laying off the executives. Instead, the promised severance payment was merely a modification of the at will relationship; the bank could terminate the officers, but if it did so in a manner that activated the clause, it was obligated to make severance payments.... The at will relationship means that severance payments are properly characterized as consideration for entering into (or continuing under) the employment contract and therefore are compensable as actual damages under FIRREA when the contract is repudiated.

*OPEIU*, 27 F.3d at 603–04 (emphasis omitted).

FDIC contends that *OPEIU* is distinguishable because the court was addressing a severance pay provision contained in a collective bargaining agreement. Appellant relies upon *Hennessy v. FDIC*, 858 F.Supp. 483 (E.D.Pa.1994), in which the court reasoned that in *OPEIU*, the severance pay agreement was part of the employees' compensation package and could be viewed as having real present value. *Id.* at 490. The *Hennessy* court distinguished *OPEIU* from cases in which the plaintiffs are employees at will and arguably have less power to enforce the repudiated severance pay plan. Without such enforcement power, the court concluded, severance pay plans have no real value at time of insolvency and are not compensable as actual damages under FIRREA.[3] *Id.*

3. The Third Circuit, relying on *Howell*, recently affirmed the summary judgment in favor of FDIC

Contrary to *Hennessy's* reasoning however, the court in *OPEIU* recognized the promised severance payment as "merely a modification of the at will relationship," noting that the bank could terminate the officers, but if it did so in a manner that activated the clause, it was obligated to make severance payments. *OPEIU*, 27 F.3d at 604. The court construed severance pay agreements as enforceable modifications of at will employment; whether the payment plan was provided in a specific collective bargaining agreement appears to be irrelevant to its analysis. *Id.*

FDIC also argues that it should not be liable for severance pay because severance pay should be considered "lost profits and opportunity" and as such, specifically exempted by Congress at § 1821(e)(3)(B)(ii). The court in *OPEIU* considered the specific question of whether severance payments are analogous to the sorts of damages (especially lost profits) Congress explicitly excluded. The court concluded:

> We think not. Congress appears to us to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach. Thus, lost opportunities and lost profits have a speculative nature that severance pay does not.

*OPEIU*, 27 F.3d at 604.

As noted above, FDIC also contends that its liability should be limited to those actual direct compensatory damages that were capable of determination as of the date of its appointment as receiver. FDIC contends, accordingly, that it has no liability for severance pay because as of the date FDIC was appointed receiver, appellees were still employed by the bank. The opinion in *OPEIU* addressed this issue in reversing the district court's decision:

> The district court ... determined that the FDIC could terminate the Bank employees without incurring any liability for sever-

ance pay because at the time the FDIC was appointed receiver the employees' contractual rights to severance pay had not yet "accrued"; [sic] the employees have valid claims only after they are terminated. We disagree. The employees had a right to severance pay as of the date of the appointment—albeit a contingent one— and that right should be treated essentially the same as the right to accrued vacation pay or health benefits [which the district court allowed].

*OPEIU*, 27 F.3d at 601 (emphasis omitted).

This court concludes that *OPEIU* offers the better-reasoned approach. FDIC's liability for "actual direct compensatory damages" under 12 U.S.C. § 1821(e)(3) includes severance pay. Severance payments are properly characterized as compensable as actual damages under FIRREA when the contract is repudiated. *OPEIU*, 27 F.3d at 603–04. Moreover, the fact that the actual termination date post-dates the appointment of the receiver is insufficient to defeat an otherwise valid claim to severance pay. *OPEIU*, 27 F.3d at 601.

The court notes, however, that in the order granting summary judgment to the appellees, Crone appears to have been awarded summary judgment in the amount of $90,000 under the Retention and Severance Agreement, as well as $90,000 under the same calculation as was applied to Monrad. Because the district court provided no justification for this apparent windfall, and because counsel offered none at oral argument, Crone is entitled to prevail under either the Severance Agreement or the severance calculation employed for Monrad, but not both.

## IV.

FDIC also appeals the award of fees and costs, asserting that (1) there is express statutory and common law preclusion of penalties against FDIC, (2) there is no statutory basis for an award of attorney fees and (3) such an award violates the "priority scheme" Congress has established for the payment of

in *Hennessy. See Hennessy v. FDIC*, 58 F.3d 908, 921–22 (3d Cir.1995). Because we conclude that the D.C. Circuit's reasoning in *OPEIU* effectively

rebuts *Howell* (see *infra*), the Third Circuit's affirmance does not affect our disposition of this appeal.

claims. For the following reasons, we agree and reverse the order awarding fees and costs.

■ There is no basis for the district court's award of "late payment penalties," which appears based solely upon state law. FDIC asserts that Congress has expressly precluded the assessment of penalties against the FDIC. First, as reviewed above, 12 U.S.C. § 1821(e)(3) provides in relevant part that FDIC liability is limited to actual direct compensatory damages, and specifically excludes "punitive or exemplary damages." Further, under a heading formerly referring to "Taxation" but later broadened by deletion, § 1825(b)(3) states that FDIC "shall not be liable for any amounts in the nature of penalties or fines...." Additionally, relevant case law suggests that claims that are punitive in nature under state law cannot be asserted against the FDIC, because the deterrent effect is minimal and other innocent creditors would be punished by diminishing available assets. *FDIC v. Claycomb*, 945 F.2d 853, 861 (5th Cir.1991), *cert. denied*, 504 U.S. 955, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992).

■ Similarly, the award of attorney fees is reversed. In *Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374 (9th Cir.1994), this court stated "since we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority." The court then concluded that "[u]nder the American rule, generally applicable in federal litigation, each side shall pay its own attorney fees." *Id.* at 1379.

## V.

The order granting summary judgment to appellees for the recovery of severance pay is affirmed. The decision to award costs, fees and penalties to appellees, and to permit Crone to receive what appears to be a double recovery of severance pay, is reversed. Both parties shall bear their own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART.