**ALLTEL INFORMATION SERVICES, INC., a Delaware corporation; and Alltel Financial Information Services, Inc., an Arkansas corporation, Plaintiffs,**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Pacific Heritage Bank, a California corporation, Defendant.**

No. CV–96–5208 KMW (CTx).

United States District Court,
C.D. California.

July 30, 1997.

not entitled to payments in excess of those already allowed by the FDIC claims administrator. Accordingly, ALLTEL's motion is denied.

Howard O. Boltz, Bryan Cave LLP, Los Angeles, CA, for Plaintiffs.

Areva D. Martin, Bolden & Martin, Los Angeles, CA, for Defendants.

## MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WARDLAW, District Judge.

The cross-motions for summary judgment before the Court concern the amount of damages due Plaintiffs Alltel Information Services, Inc. and Alltel Financial Services, Inc. (collectively "ALLTEL") as compensation for the repudiation by the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Pacific Heritage Bank ("Pacific Heritage"), of service agreements between ALLTEL and Pacific Heritage. The FDIC seeks summary judgment on alternative grounds. It argues that (1) ALLTEL's failure to comply with the mandatory statute of limitations' divests this Court of jurisdiction; or (2) even if the Court finds it has jurisdiction, the FDIC properly repudiated both the Data Agreement and the Item Agreement. ALLTEL argues that (1) the FDIC is estopped from asserting the statute of limitations because ALLTEL filed suit within the time set forth in the Notice from the FDIC; and (2) the debt to ALLTEL has not been satisfied because it is entitled to the full amount it would have received under the five-year agreements.

Having considered all the papers and records filed in support and opposition to these motions, and the oral argument of counsel, the Court **GRANTS** the FDIC's motion finding (1) that it has jurisdiction of this action; and (2) the FDIC properly repudiated the agreements at issue and, thus, ALLTEL is

## I. FACTUAL BACKGROUND

Summary judgment is appropriate as the material facts are undisputed. On February 5, 1995, Pacific Heritage entered into a five-year Data Processing Agreement ("Data Agreement") with ALLTEL.[1] Declaration of Wesley D. Kilmer ("Kilmer Decl.") Ex. A. Under the Agreement, ALLTEL was to provide data processing services for Pacific Heritage, which would be charged according to a schedule attached to the Data Agreement. *Id.* In addition to the Data Agreement, Pacific Heritage and ALLTEL entered into an Item Processing Agreement ("Item Agreement") on February 6, 1995. Kilmer Decl. Ex. B. Pursuant to the Item Agreement, Pacific Heritage was to be charged a minimum payment of $9000 a month for a five-year term in exchange for the processing of bank items. *Id.*

On July 28, 1995, Pacific Heritage was declared insolvent by the California Superintendent of Banks. The FDIC accepted tender as appointment of receiver. Kilmer Decl. Ex. C. ALLTEL filed two Proofs of Claim with the FDIC alleging breach of contract, seeking a total of $1,373,224.99 for both agreements. Kilmer Decl. Exs. F, G. On November 8, 1995, the FDIC repudiated both the Item Agreement and the Data Agreement pursuant to its authority under the Financial Institutions Recovery, Reform and Enforcement Act of 1989 ("FIRREA" or the "Act"). Kilmer Decl. Ex. D.

In response to a request by an FDIC claims representative, ALLTEL provided the FDIC a letter dated March 12, 1996 (the "March letter"), which provided calculations in support of both Proofs of Claims. Kilmer Decl. Ex. H. The March letter indicated that the Claim for the Data Agreement of $887,-224.99 was calculated based upon the outstanding accounts receivable of $17,964.31 and the average monthly fee for the remain-

---

1. At the time it entered into the Data Agreement, ALLTEL was known as Systematics Financial Services, Inc.

ing 54 months of the contract. Moreover, the March letter indicated that ALLTEL calculated the claim amount based on the average monthly fee for the six months prior to the repudiation of the contract. *Id.* It also indicated that the claim for damages pursuant to the Item Agreement was based on multiplying the 54 months remaining on the agreement by $9,000, the minimum monthly fee to be paid pursuant to the agreement. *Id.*

On May 28, 1996, the FDIC issued a Notice of Partial Allowance/Disallowance of Claim (the "Notice") and a Receiver's Certificate of Proof of Claim for $17,941.31 to ALLTEL. Kilmer Decl. Ex. I. The Notice declared that, if it wished to contest the findings of the FDIC, ALLTEL must file suit within 60 days from the date of the Notice. *Id.*

On July 26, 1996, ALLTEL filed the instant complaint for declaratory relief seeking a declaration from this Court that (1) Pacific Heritage is indebted to ALLTEL in the amount of $1,373,224.99; and (2) the FDIC improperly disallowed a portion of ALLTEL's claim.

## I. STANDARD GOVERNING MOTION

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper there are not genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party resisting summary judgment has an affirmative obligation to bring forward evidence "on which the jury could reasonably find for [the non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence will not suffice. *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "go beyond the pleadings and show 'by her own affidavits, or by the depositions, answers to interrogatories, or admissions on file' that a genuine issue of material fact exists." *Hopkins v.*

*Andaya,* 958 F.2d 881, 885 (9th Cir.1992), cert. denied, 513 U.S. 1148, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## III. ANALYSIS

### A. This Court has Subject Matter Jurisdiction Over ALLTEL's Claims.

The Court has jurisdiction of this action under FIRREA, 12 U.S.C. § 1821(d)(6)(A). FIRREA was enacted in 1989 in response to the growing crisis in the savings and loan industry. It amended the Federal Home Loan Bank Act, establishing a mandatory scheme of administrative procedures applicable to all claims for relief against failed institutions under the FDIC's control. The Act's detailed regulatory framework is designed to "restore the financial integrity of the thrift industry deposit insurance fund and to provide funds from public and private sources to deal expeditiously with failed depository institutions." *See Circle Industries v. City Federal Savings Bank,* 749 F.Supp. 447, 451 (E.D.N.Y.1990). As part of its administrative framework, the Act sets forth specific time periods within which claims must be brought against the FDIC as receiver for the failed institution. Specifically, the Act provides that the FDIC has 180 days from the date the claim was filed in which to rule on ALLTEL's claims, or the claims would be deemed disallowed. 12 U.S.C. § 1821(d)(5)(A). A claimant has 60 days from *the earlier of either* the end of the FDIC's determination period or the date of notice of disallowance in which to seek judicial review of the denial of its claim. 12 U.S.C. § 1821(d)(6). If a claimant fails to file suit before the end of the limitations period, the FDIC's disallowance shall be final and the claimant shall have no further rights or remedies with respect to such claim. 12 U.S.C. § 1821(d)(6).

■] The parties do not dispute that ALLTEL failed to file its claim within 60 days from the end of the 180–day period as mandated by the statute. Rather the dispute concerns whether the FDIC· should be estopped from asserting the limitation period

because ALLTEL filed the action before the deadline unambiguously stated in the FDIC's Notice. The Notice states:

> You have the right to seek judicial determination of the partial disallowance of your claim. To obtain such review, you must file a lawsuit ... within SIXTY (60) days of the date or postmark, whichever is later, of this letter. **YOUR FAILURE TO FILE SUIT (or move the court to continue a prior pending action) ON OR BEFORE DATE 60 DAYS FROM THE LATER OF THE DATE OF OR POSTMARK OF THIS LETTER, WILL RESULT IN YOUR CLAIM BEING FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.**

Kilmer Decl. Ex. I (emphasis in original).

The FDIC argues that courts have consistently mandated strict adherence to the statute of limitations provided in the Act, erroneously relying upon *Capitol Leasing Co. v. FDIC,* 999 F.2d 188 (7th Cir.1993). There the plaintiff failed to file suit within the 60–day period. Opposing the FDIC's motion to dismiss, the plaintiff argued that it should not have been bound by the statute of limitations because it never received notice that its claim had been disallowed. The court rejected plaintiff's argument, holding that "Section 1821(d)(6)(A) places an affirmative obligation on claimants to file suit at the end of the 180–day determination period, even in the absence of a notice of disallowance." *Id.* at 193.

*Capitol Leasing* is inapposite. In that case, the plaintiff had received no notice that its claim was disallowed. Here, the FDIC gave notice and unambiguously represented to ALLTEL that it had a right to sue and 60 days within which to do so.

This case is more closely analogous to *McAllister v. FDIC,* 87 F.3d 762 (5th Cir. 1996). In *McAllister,* the plaintiffs claimed that the RTC had, by letter, extended the 180–day period in which it was to consider

the plaintiffs' claims.[2] The RTC also falsely informed the plaintiffs that they would be paid in full. The Fifth Circuit Court of Appeals held that the plaintiffs' claims were timely because the running of the 60–day period was tolled by the RTC's misrepresentations. *Id.* at 767; *see also Freeman v. FDIC,* 56 F.3d 1394, 1403 n. 2 (D.C.Cir.1995) (the 60–day filing deadline under FIRREA is "essentially a statute of limitations ... subject to waiver, estoppel and equitable tolling"); *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984), *reh'g denied,* 768 F.2d 1353 (11th Cir.1985).

Based on the facts presented here, the FDIC is estopped from arguing that the statute of limitations bars ALLTEL's claims. Therefore, this Court has subject matter jurisdiction to entertain this action.

## B. The FDIC Properly Repudiated the Data and Item Agreements.

■] The FDIC claims administrator partially allowed ALLTEL's claim in that it provided ALLTEL a receiver's certificate in the amount of $17,964.31—the amount of the outstanding accounts receivable. The FDIC contends that this amount fully compensates ALLTEL for all services performed up to and through the date of repudiation of the two processing agreements and is all ALLTEL is entitled to under the FIRREA limitation of liability. ALLTEL contends that it is entitled to the full value of the five year contracts.

The FDIC has the power, in its capacity as a receiver, to "disaffirm or repudiate any contract it 'determines to be burdensome' and inconsistent with 'the orderly administration of the institution's affairs,' 12 U.S.C. § 1821(e)(1)." *RTC v. Management, Inc.,* 25 F.3d 627, 631 (8th Cir.1994); *Monrad v. FDIC,* 62 F.3d 1169, 1172 (9th Cir.1995). "[O]nce the FDIC properly repudiates a contract, the remaining issue is whether the claimant has suffered damages of the type allowed to be compensated by statute." *Monrad,* 62 F.3d at 1172. The Act provides

---

**2.** Plaintiffs unsuccessfully moved, pursuant to Rule 56(f), for a continuance of the RTC's motion to dismiss because they were unable to find the letter at the time of the motion. The court of

appeals held that the district court committed reversible error by denying the continuance. *McAllister,* 87 F.3d at 766.

that the FDIC's "liability for damages resulting from the repudiation is limited to actual direct compensatory damages ... which are determined as of the date of the appointment of the ... receiver. Specifically excluded from the definition of actual direct compensatory damages are damages for lost profits or opportunity." *Management, Inc.,* 25 F.3d at 631.[3]

Although there are no cases which clearly define the terms "actual direct compensatory damages" or "lost profits or opportunity" in a contract situation such as here, several courts examining contract damages under FIRREA have disallowed costs and benefits not yet incurred. *See Lawson v. FDIC,* 3 F.3d 11, 15 (1st Cir.1993) (the FDIC is not responsible for damages caused by repudiation of above market interest rates on a certificate of deposit); *Resolution Trust Corp. v. Management, Inc.,* 25 F.3d 627, 632 (8th Cir.1994) (RTC properly disallowed plaintiff's claim for "remarketing fee." or "redevelopment fee" under real estate management services agreement); *Employees' Retirement System of Alabama v. RTC,* 840 F.Supp. 972, 988 (S.D.N.Y.1993) (the RTC is not liable for future interest on zero coupon bonds); *Gibson v. RTC,* 51 F.3d 1016, 1023 (11th Cir.1995) (plaintiff not entitled to payment for legal services not yet performed); *Morton v. Arlington Heights Federal Savings and Loan Ass'n.,* 836 F.Supp. 477, 487 (N.D.Ill.1993) (plaintiff was not entitled for damages for future payment on his non-compete clause). In *Monrad,* 62 F.3d at 1174, the Ninth Circuit made it clear that Congress intended to provide for damages that would make a plaintiff whole, even if the contract, had it been performed, would have given the plaintiff more. The Court stated:

Congress appears to us to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach.

*Id.* (quoting *Office and Professional Employees Intern. Union, Local 2 v. FDIC,* 27 F.3d 598 (D.C.Cir.1994)).[4] The damages that put a plaintiff in the position he "would have occupied but for the breach," are exactly the damages sought by ALLTEL in the instant case and the damages expressly excluded by the Act.

ALLTEL contends that "actual direct compensatory damages" are measured by the amount which the bank promised to pay under the contracts, citing decisions in the Eleventh and D.C. Circuits which fail to support its position. ALLTEL first relies on *Nashville Lodging Co. v. RTC,* 59 F.3d 236 (D.C.Cir.1995), in which the D.C. Circuit ruled that "the ordinary measure of damages for breach of contract is forward-looking and seeks to protect the non-breaching party's expectation interest: the plaintiff in such a case is given the value of the expectancy which the ... [breached] ... promise created, just as if the contract had gone through to completion." *Nashville Lodging,* 59 F.3d at 245. This statement, however, is taken out of context. The *Nashville Lodging* discussion concerned whether the plaintiff's contract damages could be calculated retrospectively. In contrast to the instant case, the plaintiff was not seeking compensation for future damages; it was seeking compensation, retrospectively, for out-of-pocket expenses.

ALLTEL also relies on *McMillian v. FDIC,* 81 F.3d 1041 (11th Cir.1996). In that case, the Eleventh Circuit considered whether an employee's right to severance pay is compensable under the Act. The court found

---

**3.** 12 U.S.C. § 1821(e)(3) provides in relevant part that "(3) Claims for damages for repudiation (A) ... the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—(i) limited to actual direct compensatory damages; and (ii) determined as of—(I) the date of the appointment of the conservator or receiver; ... (B) No liability for other damages, For purposes of subparagraph (A), the term 'actual direct compensatory damages' does not include—(i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering."

**4.** ALLTEL actually cites *Monrad* in support of its claim that its lost profits are not speculative, and are therefore recoverable under the Act. The Court finds this interpretation of *Monrad* untenable.

that the plaintiff was entitled to the severance package because it was compensation for work already performed:

> The relevant injury for which there are potential damages is McMillian's having been discharged without payment of the compensation due him. Such injury is analogous to discharging an employee without giving him his last paycheck; i.e., without paying him compensation already earned.

*Id.* at 1055. Moreover, in deciding *McMillian,* the Eleventh Circuit was influenced by "the golden parachute amendment" to FIRREA which showed that "Congress contemplated that some severance payments would fall within the phrase 'actual direct compensatory damages.'" *Id.* at 1056.

■] ALLTEL further argues that this Court should look to basic contract law to determine the amount of damages, and would have this court ignore the plain language of the Act which eliminates lost profits from the computation of damages when the FDIC repudiates a contract under FIRREA. Even if ALLTEL were entitled to expectation damages, as it contends, it would not be entitled to the amounts claimed. "Expectation interest" is generally measured by

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, **less**
>
> (c) any cost or other loss that he has avoided by not having to perform.

Restatement of the Law, Second, Contracts 2d § 347 (1981) (emphasis added). Moreover, the law of contracts is clear that the non-breaching party has a duty to mitigate damages. *Id.* § 350 (unless a party has made reasonable efforts to avoid a loss, "damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation"). Here, ALLTEL has made no showing that it attempted to mitigate its damages. Instead, ALLTEL attempts to recover all of the money it would have received if the contract had not been breached without taking into account any of the costs or expenses that were saved as a result of not having to perform, or damages that could have been avoided through mitigation. There is no theory of contract law that would allow for such a windfall to be visited upon the non-breaching party to a contract.

Finally, the policy goals behind the Act weigh in favor of the FDIC's interpretation of the liability limitation. "The goal of FIRREA is to stem the financial hemorrhaging resulting from the large number of failures in the thrift industry." *Resolution Trust Corp. v. Diamond,* 45 F.3d 665, 674–675 (2d Cir. 1995), *cert. denied, Solomon v. RTC,* 515 U.S. 1158, 115 S.Ct. 2609, 132 L.Ed.2d 853, and *Pattullo v. RTC,* 515 U.S. 1158, 115 S.Ct. 2609, 132 L.Ed.2d 853 (citations and .quotations omitted). Moreover, "Congress required that the RTC [or the FDIC] conduct its operation in a manner which maximizes the net present value return from the sale or other disposition of thrift assets that come into its hands ... Therefore, the entire purpose underlying RTC's repudiation power is the maximization of return on assets." *Id.* To allow ALLTEL's claims in this case would flaunt these policy objectives.

At bottom, ALLTEL requests the Court to award a windfall. ALLTEL would receive the benefit of a five year contract without performing the services that the contract requires. Moreover, the amount claimed would be an overpayment because ALLTEL would not have incurred overhead, payroll, rent or insurance expenses. Such a result could not possibly have been intended by Congress in passing FIRREA.

## IV. CONCLUSION

Based on the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Partial Summary Judgment.