**ALLTEL INFORMATION SERVICES, INC., a Delaware corporation; ALLTEL Financial Information Services, Inc., an Arkansas corporation, Plaintiffs–Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Pacific Heritage Bank, a California corporation, Defendant–Appellee.**

No. 97–56472.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1999.

Filed Oct. 22, 1999.

Howard O. Boltz, Jr., Bryan Cave, Los Angeles, California, for the plaintiffs-appellants.

Lawrence H. Richmond, Federal Deposit Insurance Corporation, Washington, D.C., for the defendant-appellee.

Before: BOOCHEVER, O'SCANNLAIN, and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Dissent by Judge BOOCHEVER.

TASHIMA, Circuit Judge:

ALLTEL Information Services, Inc., and its wholly owned subsidiary, ALLTEL Financial Information Services, Inc., (collectively "ALLTEL") appeal the district court's grant of summary judgment in favor of the Federal Deposit Insurance Corporation ("FDIC"). ALLTEL entered into two contracts with Pacific Heritage Bank ("Pacific Heritage") to provide certain services. Soon thereafter, Pacific Heritage was declared insolvent, and the

FDIC became its receiver. The FDIC repudiated Pacific Heritage's contracts with ALLTEL, pursuant to its authority under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") and allowed only a portion of the damages ALLTEL claimed. The district court concluded that ALLTEL's claim for the disallowed portion was barred by 12 U.S.C. § 1821(e) (1999), which limits the FDIC's liability to "actual direct compensatory damages." *See ALLTEL Info. Servs., Inc. v. FDIC,* 970 F.Supp. 775 (C.D.Cal.1997). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

On February 5, 1995, ALLTEL[1] entered into a five-year contract with Pacific Heritage under which ALLTEL was to provide data processing services to Pacific Heritage ("Data Agreement"). The Data Agreement provided that ALLTEL would be paid according to a fee schedule incorporated into the Agreement. On February 6, ALLTEL entered into a second five-year contract with Pacific Heritage for the provision of item processing services ("Item Agreement"). The Item Agreement provided that Pacific Heritage would be charged a minimum monthly payment of $9,000.

A few months later, the California Superintendent of Banks declared Pacific Heritage insolvent and appointed the FDIC as receiver of the bank. The FDIC, as receiver, repudiated both Agreements with ALLTEL, pursuant to 12 U.S.C. § 1821(e). ALLTEL filed two proofs of claim with the FDIC, seeking $1,373,224.99 in damages for breach of the Agreements. The portion based on the Data Agreement was predicated on an outstanding accounts receivable balance of $17,964.31 and a monthly fee for the remaining 54 months of the Agreement, which was based on the average monthly fee for the six months preceding the FDIC's repudiation of the Agreement. The claim amount for the Item Agreement was arrived at by multiplying the remaining 54 months by $9,000, the minimum monthly fee set forth in the Item Agreement. The FDIC subsequently issued a Receiver's Certificate of Proof of Claim for $17,941.31 and disallowed the remainder of the claim.

ALLTEL filed suit seeking a declaration that Pacific Heritage owed ALLTEL $1,373.224.99, and that the FDIC had erred in disallowing a portion of its claim. ALLTEL and the FDIC filed cross-motions for summary judgment. The district court granted the FDIC's motion and denied ALLTEL's motion. It held that the FDIC properly disallowed that portion of ALLTEL's claim attributable to "expectation damages" because these damages are expressly precluded by 12 U.S.C. § 1821(e)(3), which prohibits the recovery of "damages for lost profits or opportunity." *See ALLTEL,* 970 F.Supp. at 779–80.[2] ALLTEL timely appealed.

## II. Standard of Review

A grant of summary judgment is reviewed de novo. *See Tri–State Dev., Ltd. v. Johnston,* 160 F.3d 528, 529 (9th Cir. 1998). Because the facts underlying the district court's conclusion that ALLTEL could not recover expectation damages are not in dispute, the only question we must decide is whether the district court correctly applied the relevant substantive law. *See id.*

---

1. At the time it entered into the Agreements, ALLTEL was known as Systematics Financial Services, Inc.

2. The district court first concluded that it had jurisdiction over the action in spite of ALLTEL's failure to comply with a statutory filing deadline because the FDIC was estopped from asserting a statute of limitations defense. *See ALLTEL,* 970 F.Supp. at 777–78. On appeal, the parties do not contest this conclusion, which was based primarily on the application of the doctrine of estoppel to the facts of the case, and we see no reason to disturb it.

## III. Analysis

As receiver of an insolvent financial institution pursuant to FIRREA, the FDIC may repudiate any contract of the financial institution it deems burdensome so long as the repudiation will promote the orderly administration of the financial institution's affairs and so long as the repudiation is made within a reasonable time of the FDIC's appointment as receiver. *See* 12 U.S.C. § 1821(e)(1), (2). Repudiation is treated as a breach of contract giving rise to an ordinary contract claim for damages. *See id.; Howell v. FDIC*, 986 F.2d 569, 571 (1st Cir.1993). However, FIRREA limits damages for repudiation to those enumerated in § 1821(e)(3). Section 1821(e)(3) provides, in relevant part:

**(A) In general**

Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

(i) limited to actual direct compensatory damages; and

(ii) determined as of -

(I) the date of the appointment of the conservator or receiver; or

(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

**(B) No liability for other damages**

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

(i) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

12 U.S.C. § 1821(e)(3)(A)-(B).

### A. ALLTEL's Claim for Damages

ALLTEL argues that it is entitled to a reasonable expectation measure of damages,[3] as set forth in the Data and Item Agreements as minimum monthly payments. It attempts to circumvent § 1821(e)(3)'s exclusion of damages for lost profits by contending that Congress did not extinguish the basic award of expectation damages for contracts repudiated pursuant to FIRREA, but instead precluded only damages that would be "overly remote, speculative or indirect." Thus, the argument goes, ALLTEL's lost profits are not excluded because they are not overly remote, speculative or indirect. However, there is no indication in the statute, legislative history, or case law that Congress intended to so qualify § 1821(e)(3)'s limitation on repudiation damage claims.[4] Moreover, ALLTEL fails to establish how its claim for payments for services *not yet rendered* at the time of repudiation (and never rendered) cannot be characterized as remote, speculative or indirect. *Cf. Office & Prof'l Employees Int'l Union v. FDIC*, 27 F.3d 598, 604 (D.C.Cir.1994) (*"OPEIU"*) ("[W]hether future profits and opportunities will be realized at all is a

**3.** The Second Restatement of Contracts defines the "expectation interest" as an individual's "interest in having the benefit of his bargain by being put in as good a position as he would have been in *had the contract been performed.*" Restatement (Second) of Contracts § 344 (1981) (emphasis added). The expectation interest is distinct from the "reliance interest," which is the "interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in *had the contract not been made.*" *Id.* (emphasis added). Expectation damages are the ordinary basis for dam-

ages for breach of contract. *See id.* § 347 cmt. a.

**4.** In interpreting a statute, we "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir.1997) (quoting *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996)) (internal quotation marks omitted). If the statute is ambiguous, resort to legislative history is appropriate. *See id.*

matter of speculation, since they have not accrued at the time of the repudiation.").

■ Section 1821(e)(3) expressly excludes recovery of "lost profits and opportunity." Nothing in the language of § 1821(e)(3) suggests that Congress intended "lost profits" to mean anything other than the plain meaning of the phrase.[5] Nor is there any support in the statute for ALLTEL's contention that Congress intended to preserve a plaintiff's claim for "reasonable expectation" damages. In fact, as the FDIC argues, "because 'lost profits' ... is the usual measure of compensatory damages, the fact that FIRREA specifically excludes 'lost profits' from the definition of 'actual direct compensatory damages' strongly suggests that the statute was specifically intended to preclude the ordinarily available damages." This interpretation is supported by § 1821(e)(4), which limits damages for a repudiated lease to which a failed bank was lessee to past rent, precluding payment for future rent.[6]

Section 1821(e)(3)'s exclusion of punitive or exemplary damages also supports the conclusion that "lost profits" should not be limited to only those that are overly remote, speculative or indirect. Rather, the purpose of this subsection seems to be to place limits on ordinary contract damages. As the First Circuit reasoned in its discussion of § 1821(e)(3), the statute excludes "two less-favored categories of what are indisputably actual damages (lost profits, pain and suffering), reinforcing the impression that Congress intended strictly to limit allowable claims for repudiated contracts." *Howell,* 986 F.2d at 573. *See also DPJ Co. Ltd. Partnership v. FDIC,* 30 F.3d 247, 249 (1st Cir.1994) ("[T]he policy

underlying the statutory ban on lost profits and opportunities is Congress' apparent view that these benefits have, in some measure, an aspect of being windfall gains. This same policy is reflected in the disallowance of punitive or exemplary damages ... and damages for future rent when the FDIC disaffirms a lease ....") (citation omitted).

The case law cited by ALLTEL does not support its argument and, in fact, supports the opposite interpretation. ALLTEL argues that our decision in *Monrad v. FDIC,* 62 F.3d 1169 (9th Cir.1995), established that the recovery of "actual direct compensatory damages" includes expectation damages unless the damages are speculative or remote. In *Monrad,* we held that severance pay is compensable under § 1821(e)(3) because severance pay constitutes consideration for entering into an at-will employment contract. *See id.* at 1173–74. We rejected the FDIC's argument that severance pay constitutes "lost profits and opportunity" because:

> Congress appears to us to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach. Thus, lost opportunities and lost profits have a speculative nature that severance pay does not.

*Id.* at 1174 (quoting *OPEIU,* 27 F.3d at 604).

The *Monrad* court's mention of the speculative nature of lost profits cannot be equated with precluding the recovery of "lost profits" *only if* they are speculative. That is, the fact that ALLTEL's damages

---

**5.** There is no relevant legislative history to shed light on the meaning of "actual direct compensatory damages" or "lost profits." *See McMillian v. FDIC,* 81 F.3d 1041, 1054 (11th Cir.1996) ("We note that there is no relevant legislative history [to help interpret the statutory term "actual direct compensatory damages"]; the parties have cited none, and we have been able to find none.").

**6.** Section 1821(e)(4)(B) provides that "the lessor under a [repudiated] lease ... shall be entitled to the contractual rent accruing before the later of the date the notice of ... repudiation is mailed; or the ... repudiation becomes effective...."

may be readily calculable by resort to the Data and Item Agreements and therefore are not speculative, does not take ALLTEL's damages claim out of the category of "lost profits." Rather, *Monrad*'s mention of the speculative nature of lost profits is a characterization of "lost profits and opportunity" in general. *Monrad* reveals that the phrase "lost profits and opportunity" is best interpreted as foreclosing the precise damages ALLTEL seeks to recover—expectation damages.

To the extent that ALLTEL is arguing that it is entitled to the benefit of its bargain, its contention cannot stand. As discussed above, the plain language of § 1821(e)(3) directly contradicts ALLTEL's assertion. Furthermore, as *Monrad* notes, in enacting § 1821(e)(3), Congress distinguished between "damages which can be thought to make one whole" and damages "that are designed to . . . put a plaintiff securely in a financial position he or she would have occupied but for the breach." *Monrad*, 62 F.3d at 1174 (quoting *OPEIU,* 27 F.3d at 604). Lost profits fall into the latter category. *See OPEIU,* 27 F.3d at 604 ("[L]ost profits . . . looks to what the plaintiff would have earned in the future but for the breach.").

ALLTEL also relies on the Eleventh Circuit's decision in *McMillian.* However, in holding that severance pay is recoverable under § 1821(e)(3), *McMillian* reiterates the view that the statute limits damages to those "flowing directly from the repudiation, which make one whole, as opposed to those which go farther by including future contingencies such as lost profits and opportunities or damages based on speculation." 81 F.3d at 1055. *See also Resolution Trust Corp. v. Management, Inc.,* 25 F.3d 627, 632 (8th Cir. 1994) (noting that neither severance penalties nor liquidated damages for future lost profits are recoverable under § 1821(e)(3)); *Lawson v. FDIC,* 3 F.3d 11, 15 (1st Cir.1993) (holding that damages for loss of favorable interest rate on one-year certificate of deposit were excluded because they constituted "lost profits or opportunities").

■ Accordingly, the ascertainable nature of ALLTEL's future profits does not render them recoverable because, rather than making ALLTEL whole, they would put ALLTEL in the financial position it would have occupied but for the breach. By contrast, the claim for the outstanding accounts receivable balance, allowed by the FDIC, constituted compensation already earned and thus is recoverable. Similarly, in *Gibson v. Resolution Trust Corp.,* 51 F.3d 1016 (11th Cir.1995), the Eleventh Circuit noted that a law firm whose contract had been repudiated "could not seek damages relating to services not yet rendered" because such damages did not come within § 1821(e)(3)'s limitation of damages to "actual direct compensatory damages." *Id.* at 1023. Likewise, in *McMillian,* the court analogized recoverable severance payments to an employee's last paycheck. *See* 81 F.3d at 1055.

ALLTEL contends that the District of Columbia Circuit, in *Nashville Lodging Co. v. Resolution Trust Corp.,* 59 F.3d 236 (D.C.Cir.1995), declared that compensatory damages under FIRREA are ordinary contract damages. ALLTEL mischaracterizes *Nashville Lodging,* construing dicta as the case's holding. In *Nashville Lodging,* the appellant sought to recover fees it had paid to secure a refinancing agreement that was later repudiated by the Resolution Trust Corporation ("RTC") as receiver. The RTC contended that restitution damages are not recoverable under § 1821(e)(3) because "actual direct compensatory damages" is only a forward-looking remedy intended to put the injured party in the position it would have been in had the contract been performed. *See id.* at 245. Rejecting the RTC's argument, the court reasoned that the retrospective nature of the appellant's damages did not render them non-compensatory, even though "the ordinary measure of damages for breach of contract is forward-looking and seeks to protect the non-

breaching party's 'expectation interest.'" *Id.* The court further reasoned that "remedies calibrated to putting the claimant back in the position he occupied before making the repudiated agreement are 'actual direct compensatory damages' no less than those aimed to put him where he would have been if the contract had been fulfilled. Both are presumptively recoverable under FIRREA." *Id.* at 246. Declining to consider whether relief that is solely restitutionary is recoverable under FIRREA, the court concluded that the fees paid in reliance on the refinancing agreement qualified as reliance damages and were therefore properly characterized as "direct compensatory damages." *See id.*

ALLTEL's reliance on *Nashville Lodging* is misplaced, first, because the issue before the court was whether the claimant could recover restitution damages, not expectation damages. Second, the court's statements on which ALLTEL relies are merely part of the court's reasoning in its rejection of the RTC's position. *Nashville Lodging* does not hold that FIRREA authorizes ordinary contract damages, nor that "actual direct compensatory damages" is a "benefit of the bargain" standard. Moreover, the case is factually distinguishable because the appellant in *Nashville Lodging* sought to recover payments it had actually made in reliance on the repudiated contract, whereas ALLTEL seeks to "receive the benefit of a five year contract without performing the services that the contract requires." *ALLTEL,* 970 F.Supp. at 780.

In sum, the statute's text and the weight of the case law support the conclusion that § 1821(e)'s exclusion of lost profits precludes ALLTEL from recovering payments for services it did not perform.

ALLTEL attempts to distinguish its situation on the basis of the fixed-term nature of the Agreements, arguing that the cases discussed above involved at-will employment relationships, as opposed to fixed-term agreements. The foregoing discussion, however, does not suggest that expectation damages should be treated any differently for fixed-term contracts. Moreover, in a case factually similar to the instant case, the Eighth Circuit rejected a claim for damages that was based not on an at-will employment relationship, but on a contractual clause that provided for the payment of $200,000 if notice of intent not to renew the contract was given. *See Management,* 25 F.3d at 632. The appellant, a real estate management corporation, sought to enforce the clause against the RTC, which had repudiated the contract pursuant to FIRREA. The court concluded that the fee was not based on services rendered in the past but rather was intended either as a severance penalty or a liquidated damage clause for future lost profits and thus was not compensable under § 1821(e)(3). *See id.* Thus, even where a FIRREA claim was based on a specific contractual provision, the court focused on the nature of the damages sought, rather than the nature of the contract, in order to determine whether the damages sought were actual direct compensatory damages.

ALLTEL further asserts that the Agreements were "fixed-term contracts which specify minimum contract payment in the event of an early termination without cause." ALLTEL thus contends that it is seeking not lost profits, but damages arising out of covenants in the contracts. However, we have found nothing in the Data and Item Agreements that provides for damages based on minimum monthly payments in the event of termination, nor has ALLTEL pointed to any such provision. In fact, both Agreements seem to foreclose this possibility. For example, the section of the Data Agreement that provides for certain sections of the Agreement to survive termination does not mention the provision on fees. Fees are to be paid "for the Services provided hereunder," and the termination provision does not provide for payment if services are not provided. Furthermore, the section on services rendered after termination pro-

vides for the payment of fees for services rendered on a month-to-month basis; no mention is made of payments in the absence of the provision of services.[7]

Similarly, the termination provision in the Item Agreement does not provide for any payment in the event of the Agreement's termination. The provision on payment merely notes that "Client agrees to pay [ALLTEL] for the services performed hereunder.... All fees shall be payable on the first business day of each month, for services *rendered during the prior month.*" (Emphasis added.) The fee schedule incorporated into the Agreement provides that the service fee continues for "the term of the Agreement" and states simply, "Minimum Monthly Processing Fees IS [sic] $9,000.00." There is no indication that the monthly minimum provision survives termination; the minimum monthly fee is more sensibly construed as a required *amount* of payment for services rendered rather than a guaranteed payment whether or not services are rendered. Furthermore, the Agreement specifically notes that termination of any part of the Agreement terminates the entire Agreement unless a provision states otherwise.[8]

■ Even if the Agreements had provided for monthly payments to be paid for the duration of the term upon termination, these payments would best be characterized as liquidated damages, for the minimum monthly payments would constitute an estimate of what ALLTEL would have received had the Agreements been performed. However, such damages would not constitute "actual direct compensatory damages" and thus would not be compensable under § 1821(e)(3). *See Hennessy v. FDIC,* 58 F.3d 908, 921 (3d Cir.1995) (finding severance payments not compensable because analogous to liquidated damages); *Howell,* 986 F.2d at 573 (stating that severance payments are "at best an estimate of likely harm made at a time when only prediction is possible" and thus "comprise or are analogous to 'liquidated damages'"); *cf. Management,* 25 F.3d at 632 (characterizing a specific contractual provision as either a severance fee or a liquidated damage clause and so declining to award damages).

In short, ALLTEL is not entitled to damages for minimum monthly payments for two reasons: first, because such damages are precluded by § 1821(e)(3), and second, because such payments are not provided for in the Data and Item Agreements. Contrary to ALLTEL's contention, this does not mean that it is entitled to no recovery at all, but entitled to recovery only for services it actually performed.[9]

---

7. "Any services that are provided to Financial Institution after the expiration or termination of this Agreement, for which a written agreement has not been entered into by the parties, shall be provided on a month-to-month basis, and are subject to the terms and conditions of this Agreement, except that the fees for such Services shall be 125% of the current prevailing ... fee schedule."

8. "Expiration or termination of any part of this Agreement shall terminate the entire Agreement except for any portion hereof which expressly remains in force and in effect notwithstanding such termination or expiration."

9. The FDIC suggests that ALLTEL may be raising an additional argument: that the minimum monthly payments were intended to compensate ALLTEL for the costs it incurred in preparing to perform its contractual obligations to Pacific Heritage. It does not appear, however, that ALLTEL is raising this issue. In framing the issues on appeal, ALLTEL raises only the question of whether it is entitled to the reasonable expectation measure of damages, as set forth in the Data and Item Agreements. If, in fact, ALLTEL is attempting to raise this argument, it is waived because it was not raised before the district court. Although issues raised for the first time on appeal may be reviewed "under certain narrow circumstances," *Kimes v. Stone,* 84 F.3d 1121, 1126 (9th Cir.1996) (quoting *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1488 (9th Cir.1995)) (internal quotation marks omitted), ALLTEL's failure to raise this issue sooner does not meet any of the recognized exceptions to the waiver rule.

## B. Affirmative Defense of Failure to Mitigate

■ ALLTEL argues that the case should be remanded because it was inappropriate for the district court to have relied on an unpled affirmative defense in finding that, "[e]ven if ALLTEL were entitled to expectation damages, as it contends, it would not be entitled to the amounts claimed" because ALLTEL failed to demonstrate that it mitigated its damages. *ALLTEL,* 970 F.Supp. at 780.

Because the district court concluded that ALLTEL could not recover expectation damages at all, however, the calculation of such damage is irrelevant. The district court's statement was mere dictum, responding to ALLTEL's assertion that the district court should look to basic contract law to determine the appropriate measure of damages. The statement merely served to show how, even under basic contract law, ALLTEL would not be entitled to the amount of damages it sought. We conclude, therefore, that the district court's statement does not rise to the level of an alternative holding and its discussion of ALLTEL's failure to demonstrate mitigation of damages does not provide a reason for overturning the district court's award of summary judgment to the FDIC.

## IV. Conclusion

Because § 1821(e)(3) precludes the award of damages for "lost profits," ALLTEL is not entitled to damages based on its expectation interest in the Data and Item Agreements. Furthermore, the district court's mention of ALLTEL's failure to mitigate damages does not require the case to be remanded. Accordingly, the district court's entry of summary judgment in favor of the FDIC is

**AFFIRMED.**

BOOCHEVER, Circuit Judge, dissenting:

This case involved cross-motions for summary judgment. I agree that ALLTEL may not recover its expectation under the contract as compensation for the substantial costs that it claims to have incurred in preparation for performance, and would affirm the denial of its motion for summary judgment.

I do not believe, however, that the FDIC is entitled to summary judgment as there is a triable issue of fact concerning the damages to which ALLTEL is entitled for reimbursement of its costs in preparation for performance of the contract.

I realize that ALLTEL limited its argument to the contention that it was entitled to the full amount it expected to receive for performance of the five-year contract, but that argument necessarily subsumed that it was entitled to the lesser amount of its actual expenditures in preparation for performance.

I disagree with the majority's apparent conclusion that the waiver rule bars consideration of whether these preparation expenses are compensable under another theory of damages. *See* Maj. Op. at 1043 n. 9. This court has considered issues raised for the first time on appeal in "those cases in which the courts below were not presented with and did not consider the governing theory of law." *Aguon v. Calvo,* 829 F.2d 845, 848 (1987). It is basic contract law that "the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance," when expectation damages are, for whatever reason, unavailable. Restatement (Second) Contracts § 349. Cases cited in the majority opinion uphold the right to such damages under FIRREA. *See Nashville Lodging Co. v. RTC,* 59 F.3d 236, 245–46 (D.C.Cir.1995) (holding reliance damages recoverable under FIRREA); *cf. Monrad v. FDIC,* 62 F.3d 1169, 1173–74 (9th Cir.1995); *McMillian v. FDIC,* 81 F.3d 1041, 1053–56 (11th Cir. 1996) (both finding severance pay to be earned compensation and therefore recoverable as "actual direct compensatory damages").

The record in this case adverts to facts that, if proven, would clearly entitle ALLTEL to recover its preparation costs as direct compensatory damages under a reliance theory. I would remand this case to allow the district court to resolve this triable issue of fact.