United States Court of Appeals,

Fifth Circuit.

No. 95-50549.

Walter W. McALLISTER, III, Gerry Solcher and Robert Cuyler, Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for San Antonio Savings Association, F.A., Defendant-Appellee.

July 16, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, JONES and DENNIS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Plaintiffs filed suit against the Resolution Trust Corporation, as receiver for San Antonio Savings Association, F.S.B., claiming that they were entitled to assets contained in the Savings Association's retirement trust. The district court dismissed plaintiffs' complaint for lack of subject matter jurisdiction. Plaintiffs appeal from that dismissal. For the reasons stated below, we REVERSE the district court's dismissal, and REMAND this case for further proceedings in accordance with this opinion.

I.

FACTS

The plaintiffs worked as executive officers at San Antonio Savings Association. As executive officers, they participated in a supplemental executive retirement plan, the assets of which were placed in an umbrella trust. The assets in the trust were to be

1

used to pay retirement benefits to executive officers.  However, the trust assets could also be used to pay creditors if the bank became insolvent.

San Antonio Savings Association began having financial difficulties in the late 1980's.  It was placed in conservatorship in February 1989, and was then placed in receivership in July 1989. The Resolution Trust Corporation[1] ("RTC") reconstituted San Antonio Savings Association by chartering San Antonio Savings Association, FA on July 13, 1989.  San Antonio Savings Association, FA was placed in RTC receivership in March 1990.

Each time the RTC reconstituted what was San Antonio Savings Association, it asked plaintiffs to continue working as executives for the institution.  Plaintiffs claim that in February 1990, during a meeting with RTC officials, an RTC accounting specialist told them that they would be paid in full for working for the institution.

In December 1991, the RTC notified plaintiffs that they had until February 27, 1992 to file proofs of claims for their retirement plan benefits.  The notices sent to plaintiffs stated that the supplemental executive retirement plan was a "non-qualified plan;"  that is, participants in the plan would remain unsecured general creditors of San Antonio Savings Association, FA.

---

[1]In accordance with 12 U.S.C. § 1441a(m)(1), the RTC apparently ceased operations on December 31, 1995.  Its statutory successor is the Federal Deposit Insurance Corporation ("FDIC"). Therefore, we have substituted the FDIC for the RTC in the caption of this case.

Plaintiffs filed proofs of claims with the RTC on February 25, 1992. Plaintiffs contend that the RTC lost some of their proofs of claims, and that the RTC extended the time in which it had to consider their claims by writing them a letter asking them to refile the claims.[2] The RTC took no action on plaintiffs claims until March 22, 1993, when it issued "Receiver's Certificates" allowing plaintiffs' claims in full. The Receiver's Certificates did not mention the claims' priority. However, the cover letter that accompanied the Receiver's Certificates stated that "payment of depositor claims receive a preference.... All claims of the depositors must be paid in their entirety before any payment can be made on the claims of the general trade creditors."

After receiving the Receiver's Certificates, plaintiffs attempted to determine whether their claims would be paid in full; that is, whether the retirement plan trust's assets were greater than the sum of the claims made against the institution. RTC officials gave plaintiffs information that led them to believe that there were only approximately $100,000 in claims against the trust, compared to trust assets of several million dollars. Thus, based on the information provided by RTC officials, plaintiffs believed that their claims would be paid in full.

On January 3, 1994, after hearing nothing from the RTC for over five months, plaintiff Robert Cuyler ("Cuyler") called the Dallas RTC office to obtain current information on the status of

_____

[2]The plaintiffs were unable to produce this letter, but claim that they would have been able to produce it had the district court allowed them to conduct discovery on the issue.

plaintiffs' claims. Marty Smith, who worked at the Dallas RTC office, told Cuyler that the RTC no longer had a record of San Antonio Savings Association, FA because the institution had been sold to Bank of America. Later in January, an RTC official named Mr. Crone informed Cuyler that the RTC, as receiver, was still selling San Antonio Savings Association, FA assets, and that he would relay any additional information to Cuyler as soon as he obtained it.

Cuyler again called Crone in February. During this call, Crone promised to get Cuyler a list of the creditors ahead of plaintiffs' claims, and the amount of those creditors' claims. After two more conversations with Crone during the next month, Crone told Cuyler on March 2, 1994 that, after the RTC was paid, there would be forty-one million dollars available for future dividends. Crone also told Cuyler that he would find out how much of this forty-one million would be available to pay plaintiffs' claims.

On March 16, 1994, Cuyler called Crone again, and Crone offered Cuyler a list of creditors that showed only $100,000 in claims that were superior to plaintiffs' claims. A half hour later, Crone called Cuyler and told him that there was $1.039 billion still owed to the RTC, and that there was not enough money to pay the RTC in full. For the first time in four years, the RTC told the plaintiffs that their claims would not be paid. Crone stated that he did not know the source of the previous information he gave to Cuyler that led plaintiffs to believe that their claims

4

would be paid in full.

After learning that the RTC was not going to pay their claims, plaintiffs filed new proofs of claims on March 21, 1994. These claims were slightly different than the original claims; they were described as "failure to pay receivership certificate on Supplemental Executive Retirement Plan." Two weeks later, on April 4, 1994, the RTC sent plaintiffs letters informing them that their claims would "not be considered." The letter also provided that the RTC's decision not to consider the new claims was neither an acceptance nor a denial of the claims.

On November 15, 1994, plaintiffs filed suit against the RTC. The RTC moved to dismiss plaintiffs' claims on March 17, 1995 arguing, *inter alia,* that the statute of limitations had run because plaintiff's did not timely seek judicial review of the RTC's classification of their claims as those of unsecured general creditors.

On May 30, 1995, the RTC filed its response to the plaintiffs' reply to their motion to dismiss. In its response, the RTC for the first time argued that the plaintiffs' claims were barred on October 22, 1992, 60 days after the expiration of 180 days from the date on which plaintiffs filed their original proof of claims. This time period could only be extended by a written agreement, and the RTC contended that no written agreement existed.

In response to the RTC's new argument, plaintiffs contended that the RTC had, by letter, extended the 180 day period in which it was to have considered plaintiffs' first proofs of claims when

it asked plaintiffs to refile their proofs of claims. Plaintiffs also requested a continuance under Federal Rule of Civil Procedure 56(f) so that they could conduct discovery and obtain a copy of this written extension.

The district court denied plaintiffs' request for a continuance, and granted the RTC's motion to dismiss on the ground that plaintiffs failed to file suit within the 180/60 day period set out in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The plaintiffs appeal from that dismissal.

## II.

## DISCUSSION

The district court gave two alternate grounds for dismissing plaintiffs' suit for lack of subject matter jurisdiction. First, it held that plaintiffs' right to bring a suit had expired on October 22, 1992, 60 days after the expiration of 180 days from the date on which plaintiffs filed their original proof of claims. Second, it held that, assuming *arguendo* that the RTC had agreed in writing to extend the 180 day period in which it was to have considered plaintiffs' claims, plaintiffs' claims were still not timely. We will address both grounds.

"We review dismissals for lack of subject matter jurisdiction de novo, applying the same standard as that applied by the district court." *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 907 (5th Cir.1994) (citing *Matter of Bradley,* 989 F.2d 802 (5th Cir.1993)). Dismissal is only proper when "it appears certain that the

6

plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995). A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ynclan v. Department of the Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991).

In order to receive judicial review of the RTC's treatment of their claims, plaintiffs must comply with the FIRREA's administrative claims process, which is set forth at 12 U.S.C. § 1821(d). *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 881-82 (5th Cir.1992). Under Section 1821(d), plaintiffs must first file a claim with the RTC. The RTC then has 180 days to determine whether to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). This 180 day period may be extended by a written agreement between a claimant and the RTC. 12 U.S.C. § 1821(d)(5)(A)(ii). To obtain judicial review of the RTC's handling of the claim, a claimant must file suit within 60 days of the earlier of: (1) the end of the 180 day period[3]; or (2) the date of any notice of disallowance of the claim. 12 U.S.C. § 1821(d)(6).

We first turn to the issue of whether plaintiffs' claims were barred on October 22, 1992. Plaintiffs filed their first proofs of

---

[3]Or the end of the extended review period to which the RTC and the claimant agreed in writing.

claims on February 25, 1992. It is undisputed that the RTC took no action on plaintiffs' claims during the 180 day period after February 25, 1992. Therefore, unless the 180 day period was extended by a written agreement between plaintiffs and the RTC, plaintiffs had to file suit within 60 days of the expiration of the 180 day period (i.e. by October 22, 1992) in order to preserve their right to judicial review.

Plaintiffs claim that the RTC agreed to extend the 180 day period when it sent them a letter asking them to refile their proofs of claims. However, they were unable to produce a copy of this letter, and the affidavits filed in opposition to the RTC's motion to dismiss neither state that the extension was in the form of a letter nor state the date upon which the RTC agreed to the extension.

Plaintiffs contend that they would have been able to obtain the letter had they been granted a continuance to conduct discovery on the issue. The RTC first made the argument that the period during which plaintiffs could seek judicial review had expired on October 22, 1992 in its response to plaintiffs' opposition to its motion to dismiss, which was filed on May 9, 1995. Plaintiffs only had ten days to respond to this new argument. Claiming that they needed more time to conduct discovery regarding the new issue, plaintiffs moved for a continuance under Federal Rule of Civil Procedure 56(f). The district court denied plaintiffs' motion, and granted the RTC's motion to dismiss without a hearing on May 31, 1995.

The district court committed reversible error in refusing to grant a continuance. We review a denial of a request for a Rule 56(f) continuance for an abuse of discretion. *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.,* 48 F.3d 927, 930 (5th Cir.1995). The district court's discretion is not unlimited, however. When a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery and a hearing that is appropriate to the nature of the motion to dismiss. *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212. In this case, plaintiffs only had ten days between the time the RTC first argued that plaintiffs' time to seek judicial review expired on October 22, 1992 and the date on which plaintiffs had to respond to this allegation. We hold that the district court abused its discretion in refusing to grant a Rule 56(f) continuance to allow plaintiffs to conduct discovery and properly respond to the RTC's argument.

As an alternate ground for affirming the district court's dismissal, the RTC argues that, even if it extended the time in which plaintiffs could seek judicial review, that extended time period had lapsed before November 15, 1994, the date on which plaintiffs filed their complaint in this suit. We disagree.

The plaintiffs contend that the RTC extended the 180 day period, and that it orally informed them that their claims would be paid before the expiration of that period before it issued Receiver's Certificates in March 1993. Because there is no

9

requirement that the allowance of a claim be in writing, we hold that such oral assurances constitute an allowance of the claim. Unfortunately, there is no evidence regarding the date upon which the RTC allegedly agreed to extend the 180 day period, or the date upon which the RTC allegedly orally allowed plaintiffs' claims. Because the plaintiffs' did not have adequate time to conduct discovery on this issue, however, we will not use this lack of evidence as a ground for affirming the dismissal. Instead, on remand, after allowing the parties to conduct more discovery, the district court will have to determine if and when the RTC agreed to extend the 180 day period, and whether the RTC orally allowed plaintiffs' claims during that extended period or the 60 days following it.

Assuming for the time being that the RTC allowed plaintiffs' claims, we now turn to the question of whether November 1994 was too late to seek judicial review of the RTC's classification of the claims. To answer this question, we must first determine when the 60 day period during which plaintiffs could file suit began to run. After making that determination, we will determine whether the RTC's false representations tolled the running of the 60 day period.

Assuming that the parties extended the 180 day period, the 60 day period apparently began to run on the date upon which the RTC told plaintiffs that their claims would be approved and arguably classified the claims as those of unsecured general creditors. At first glance, Section 1821(d)(6) does not seem to apply to

10

situations in which the RTC approved a claim. Section 1821(d)(6) provides that the 60 day period begins to run on either the date upon which the RTC disallows a claim, or at the end of the 180 day period if the RTC took no action during the 180 day period. The RTC issued the Receiver's Certificates allowing plaintiffs' claims. In doing so, the RTC arguably implicitly disallowed plaintiffs' claims that their claims should be categorized as those of service providers, rather than those of unsecured general creditors. Therefore, the 60 day period in which plaintiffs could challenge the RTC's categorization of their claims may have begun to run on the date upon which the RTC allowed their claims as those of unsecured general creditors.

Plaintiffs' claims are still timely, however, because the running of the 60 day period was tolled by the RTC's misrepresentations. Under the doctrine of equitable estoppel, a defendant is estopped from asserting a limitations defense when its conduct induced or tricked a plaintiff into allowing a filing deadline to pass. *See Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876, 879 (5th Cir.1991) (stating that "[i]f the defendant did conceal facts or mislead the plaintiff and thereby caused the plaintiff not to assert his rights within the limitations period, the defendant is estopped from asserting [limitations] as a defense."), *cert. denied,* 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158. *Cf. Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1991) (noting that the Supreme

11

Court has allowed equitable tolling[4] "in situations where the claimant has been induced or tricked by his adversary's conduct into allowing the filing deadline to pass.").  In this case, the RTC's false assertions that the plaintiffs would be paid in full induced them not to file suit within the 60 day period following the issuance of the Receiver's Certificates.  Because of these false representations, the RTC is equitably estopped from raising limitations as a defense.

III.

CONCLUSION

We REVERSE the district court's dismissal, and REMAND this case for further proceedings in accordance with these opinions.

---

[4]Several courts, including the Supreme Court in *Irwin,* have used the terms "equitable tolling" and "equitable estoppel" interchangeably.  This Circuit, however, has joined several others in distinguishing between the two doctrines.  In *Rhodes,* we explained this distinction by noting that equitable tolling focuses on the plaintiff's excusable ignorance of the facts underlying the suit, while equitable estoppel focuses on the defendant's misrepresentation of concealment of the facts underlying the suit.  927 F.2d at 879.  The instant case, which involves plaintiffs being lulled into not filing suit by the RTC's false statements, involves equitable estoppel, not equitable tolling.