**UNITED STATES of America,
Plaintiff,**

v.

**CUSHMAN & WAKEFIELD,
INC., et al., Defendants.**

**Cushman & Wakefield, Inc., et
al., Third–Party Plaintiffs,**

v.

**Bank of America, N.A., et al.,
Third–Party Defendants.**

**No. CIV.A. 3:01–CV–2342G.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 28, 2002.

---

Shane Read, U.S. Attorney's Office, Department of Justice, Dallas, Michael L Minsker, Cozen O'Connor, Charlotte, NC, Peter A Winn, U.S. Attorney's Office, Department of Justice, Dallas, Stacey M Bosshardt, U.S. Department of Justice, Civil Division Torts Branch, Washington, DC, for United States of America, Plaintiff.

Terence J Hart, Munsch Hardt Kopf & Harr, Jeffrey M Goldfarb, Akin Gump Strauss Hauer & Feld, S Cass Weiland, Patton Boggs, Dallas, for Cushman & Wakefield Inc, Cushman & Wakefied of Michigan Inc, Interior Systems Inc, William F Marcellino, Defendants.

### *MEMORANDUM ORDER*

FISH, Chief Judge.

Before the court are the motions of the plaintiff United States of America ("United States") to strike the affirmative defenses of the defendants Cushman & Wakefield, Inc. and Cushman & Wakefield of Michigan, Inc. (collectively, "C & W") and to dismiss the counterclaims of C & W. For

the reasons discussed below, the motion to strike is granted and the motion to dismiss is granted in part and denied in part.

## I. *BACKGROUND*

The United States filed this action on November 20, 2001 against C & W, Interior Systems, Inc. ("ISI"), and William F. Marcellino ("Marcellino"). Complaint at 1. The United States asserts violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, and common law causes of action for fraud and unjust enrichment. *Id.* According to the complaint, from 1997 until 2001, C & W managed and operated a mail-presort business that sorted mail for customers in the Dallas area and then presented that mail to the United States Postal Service ("USPS") for mailing (the "Presort Operation"). *Id.* ¶ 8. From August 1999 until October 2000, C & W ran the Presort Operation through a joint venture with ISI and its subsidiary, Cushman & Wakefield of Michigan (the "Joint Venture"). *Id.* ¶ 8.

The Presort Operation handled permit and metered mail.[1] *Id.* ¶ 30. The Postal Service maintained advance deposit accounts in the name of C & W and the Joint Venture for both permit and metered mail handled by the Presort Operation. *Id.* ¶¶ 32, 39. The accounts were funded by the Presort Operation with checks presented by its customers. *Id.* ¶¶ 34, 40. The USPS required the Presort Operation to submit postage statements with the mail it presented, reporting the amount of mail submitted and the amount of postage due. *Id.* ¶¶ 36, 42. Based on these submissions, the USPS would deduct postage due from the advance deposit accounts. *Id.*

The United States alleges that from July 1998 until about January 2000, the defendants were involved in a scheme to de-fraud the USPS by avoiding payment of $6.2 million in postage in connection with the Presort Operation. *Id.* ¶ 9. Specifically, the United States alleges that the defendants submitted, or caused to be submitted, postage statements to the USPS that knowingly under-reported the amount of mail they presented to the USPS for mailing and, as a result, avoided paying postage due on that mail. *Id.* ¶¶ 12, 45, 47, 55. The complaint itemizes hundreds of withheld postage statements, providing the date of the statement, the number of unreported pieces of mail, and the postage due on that mail. *Id.* ¶ 46 and Exhibit A attached to Complaint. Ralph Ebert ("Ebert"), the manager of the Presort Operation, and Marcellino each allegedly received over $1 million from two accounts maintained by the USPS in the name of C & W or the Joint Venture. *Id.* ¶ 13.

On January 31, 2002, C & W filed its first amended answer to the United States' complaint. First Amended Answer of Defendants Cushman & Wakefield, Inc. and Cushman & Wakefield of Michigan, Inc. ("Answer") at 1. In the answer, C & W raised seven affirmative defenses, including waiver, estoppel, ratification, intervening/supervening causes, contributory/comparative fault, unclean hands, and setoff and recoupment. *Id.* at 16–20. Less than a month later, the United States moved to strike, under FED. R. CIV. P. 12(f), six of the affirmative defenses asserted by C & W. United States' Memorandum in Support of its Motion to Strike Affirmative Defenses ("Motion to Strike"). C & W filed its response to the motion on March 12, 2002, *see* Defendant Cushman & Wakefield, Inc. and Cushman & Wakefield of Michigan, Inc.'s Response and Brief in Opposition to the Motion to Strike of the

---

**1.** Permit mail is mail that has a permit imprint rather than a postage stamp or meter stamp. Complaint ¶ 31. Metered mail is mail with postage printed by a postage meter that has been approved by the USPS. *Id.* ¶ 37.

United States ("Response to Strike"), and the United States filed its reply approximately two weeks later. United States' Reply to Defendants' Opposition to Motion to Strike Affirmative Defenses ("Reply to Strike").

On March 22, 2002, C & W filed its first amended counterclaims against the United States and the USPS for negligence, negligent supervision, negligent monitoring and entrustment, breach of contract and trust, breach of bailment duties, conversion, and recoupment and offset.[2] First Amended Counterclaims of Cushman & Wakefield, Inc. and Cushman & Wakefield of Michigan, Inc. ("Counterclaims") at 10–15. In the counterclaims, C & W contends that the United States is liable for failing to prevent the submission of false statements as to the amount of mail tendered for delivery and for giving Ebert refund checks made out to C & W, which checks were subsequently converted by Ebert to his own use. Counterclaims at 3–10.

On April 10, 2002, the United States moved to dismiss, under FED. R. CIV. P. 12(b)(1) and (6), the counterclaims filed against it by C & W for failure to state a claim. United States' Memorandum in Support of its Motion to Dismiss First Amended Counterclaims of Cushman & Wakefield, Inc. & Cushman & Wakefield of Michigan ("Motion to Dimiss"). C & W responded to this motion on May 15, 2002, see The Cushman & Wakefield Parties' Response and Brief in Opposition to the United States' Motion to Dismiss Counterclaims ("Response to Dismiss"), and the United States filed its reply a few weeks later. United States' Reply Memorandum

in Support of its Motion to Dismiss First Amended Counterclaims of Cushman & Wakefield, Inc. and Cushman & Wakefield of Michigan, Inc. ("Reply to Dismiss").

The court will address each of these motions in turn.

## II. ANALYSIS

### A. Motion to Strike Affirmative Defenses

### 1. Standard for Motion to Strike Under Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> **(f) Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. R. CIV. P. 12(f).

Motions to strike are disfavored and infrequently granted. *Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir.1962); *Federal Deposit Insurance Corporation v. Niblo*, 821 F.Supp. 441, 449 (N.D.Tex.1993) (Cummings, J.) ("Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.").[3] To suc-

---

**2.** C & W filed its original counterclaims on January 7, 2002.

**3.** As the court noted in *Augustus*, "when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under

such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits." *Augustus*, 306 F.2d at 868 (discussing standard for a motion to strike allegations from a complaint).

ceed on a motion to strike, the movant must show "that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Niblo*, 821 F.Supp. at 449 (addressing the standard in the context of a motion to strike defenses in an answer). A court must deny a motion to strike a defense if there is any question of law or fact. *Id.* A Rule 12(f) motion to strike a defense is proper, however, when the defense is insufficient as a matter of law. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The granting of a motion to strike is within the discretion of the court. *Niblo*, 821 F.Supp. at 449.

### 2. The Affirmative Defenses

#### (a) Estoppel

In its second affirmative defense, C & W asserts that the United States' claims are barred by the defense of estoppel. Answer at 17. According to C & W, the conduct of the United States, "including the acts and omissions of the USPS, were willful, wanton, reckless, and rise to the level of gross negligence."[4] *Id.* at 18. These acts and omissions include, among other things, the failure of the USPS to inspect the mail received from the Presort Operation and the USPS' failure to stop the illegal transfer of funds by Marcellino and Ebert. *Id.* The United States moves to strike this defense on two grounds: (1)

estoppel may not be asserted against the government where public money is at stake; and (2) even if estoppel were available, C & W failed to plead and establish affirmative government misconduct. Motion to Strike at 3–6; Reply to Strike at 1–6.

■ Estoppel is generally not available as a defense against the government. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant."). While estoppel may be available against the government in some instances, courts have not entertained the defense where public money is at stake. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 422, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("we have reversed every finding of estoppel [against the government] that we have reviewed" and "[e]ven our recent cases evince a most strict approach to claims involving public funds."); *Rosas v. United States Small Business Administration*, 964 F.2d 351, 360 (5th Cir.1992) ("claims for estoppel cannot be entertained where public money is at stake.") (citing and quoting *Richmond*, 496 U.S. at 427, 110 S.Ct. 2465).

---

4. "The elements of estoppel are: 1) the party to be estopped made a definite misrepresentation to the party asserting estoppel; 2) the party to be estopped was aware of the facts; 3) the party to be estopped intended the party asserting estoppel to act on its misrepresentation or had reason to believe the party asserting estoppel would act on its misrepresenta-

tion; 4) the party asserting estoppel neither had knowledge nor reason to know of the facts; and 5) the party asserting the estoppel reasonably relied on the misrepresentation to its detriment." *Niblo*, 821 F.Supp. at 452 (citing *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1983)).

■ In this case, C & W argues that estoppel is available because the allegations contained in the complaint and answer concern the government's "proprietary" functions and "do not involve general funds from the U.S. Treasury or the government's sovereign functions or law enforcement powers." Response to Strike at 4. In support of this argument, C & W asserts that Congress intended the USPS to be treated like other business entities and that case law supports a finding that the USPS, as is the case here, acts as a proprietary entity. *Id.* at 4–5.

The court agrees with the United States that estoppel should not available in this instance. First, as the United States notes, USPS monies are public monies. Reply to Strike at 2, citing *Baker v. Runyon*, 114 F.3d 668, 672 (7th Cir.1997) ("Although the Postal Service is a 'self-funding' entity, this is not to say that it is divorced from the United States Treasury. The Postal Service is self-funding only in the sense that Congress has appropriated to it all of the Postal Service's own revenues."), *cert. denied*, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 277 (1998), and 39 U.S.C. § 101(a) (the USPS is operated as a "fundamental service provided to the people by the Government of the United States ... and supported by the people."). Based on the court's reading of the complaint, C & W's actions impact the public fisc. *Smith v. United States*, 287 F.2d 299, 300, 304 (5th Cir.1961). Specifically, the United States alleges that it mailed millions of pieces of mail for C & W without compensation, apparently to the tune of $6.2 million. Complaint ¶ 9; Reply to Strike at 2.

Second, the court disagrees with C & W's assertion that the USPS acts as a proprietary entity when it accepts and delivers ordinary, first-class mail. Response to Strike at 5, citing *Portmann v. United States*, 674 F.2d 1155, 1166–69 (7th Cir.

1982) (holding USPS acted as a proprietary entity in the delivery of postal express mail). The United States contends that the sovereign/proprietary distinction is of no use here because the Supreme Court has held that its "decisions have made it clear that the Federal Government performs no 'proprietary' functions," *see* Reply to Strike at 2 (citing *Federal Land Bank of Wichita v. Board of County Commissioners of County of Kiowa*, 368 U.S. 146, 150–51, 82 S.Ct. 282, 7 L.Ed.2d 199 (1961)), and that even if the distinction does apply, the USPS acts in its sovereign capacity "when it engages in the receipt and delivery of mail throughout the nation." Reply to Strike at 3. Both sides cite various statutory provisions in the Postal Service Code in support of their contentions as to whether the USPS acts as a proprietary or sovereign entity in accepting and delivering first-class mail. Response to Strike at 4–6 (citing 39 U.S.C. §§ 409(c), 410); Reply to Strike at 2–4 (citing 39 U.S.C. §§ 101, 201, 403(a), 601–606). Based on the court's review of these statutory provisions, as well as the parties' briefing on this issue, the court concludes, for the purposes of determining whether the defense of estoppel is available in this case, that the USPS acts in a sovereign capacity in accepting and delivering first-class mail. *See* 39 U.S.C. § 101(a) ("The [USPS] shall be operated as a basic and fundamental service provided to the people by the Government of the United States .... The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together."); 39 U.S.C. §§ 601–606 (codification of the postal monopoly). The court's conclusion on this point is further buttressed by the fact that C & W incorrectly relies on *Portmann* and *Loeffler* for the proposition that the USPS acts solely in a proprietary capacity. *See* Response to Strike at 4–5 (citing *Portmann*, 674 F.2d at 1169, and

*Loeffler v. Frank*, 486 U.S. 549, 556, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988)); *see also* Reply to Strike at 4. The court finds both of those cases distinguishable from the instant action. In *Portmann*, the Seventh Circuit held that equitable estoppel defense was available because, in delivering express mail, the USPS "was not performing an inherently sovereign or peculiarly governmental function. Instead, it was competing directly for plaintiff's business with a number of private express mail carriers." *Portmann*, 674 F.2d at 1168–69. By contrast, this case concerns only the receipt and delivery of ordinary, first-class mail, which is exclusively the province of the USPS. In addition, the Seventh Circuit later stated that its decision in *Portmann* was limited to the USPS' express mail operation. See *Azar v. United States Postal Service*, 777 F.2d 1265, 1269 (7th Cir.1985) (noting that the "absolute bar [of asserting the estoppel defense against the government] has been relaxed in certain narrowly-defined circumstances .... [O]ne such circumstance is where the Postal Service's Express Mail Operations are involved."). Similarly, C & W's reliance on *Loeffler* is also without merit. In *Loeffler*, the Supreme Court recognized that "the Postal Service's liability must be presumed to be the same as that of any other business." *Loeffler*, 486 U.S. at 556, 108 S.Ct. 1965. As the United States notes, however, *Loeffler* is inapplicable to the claims in this case. Reply to Strike at 4 n.4. In *Loeffler*, the Supreme Court held that the "sue-and-be-sued" clause of the Postal Reorganization Act, 39 U.S.C.

§ 401(1), allows for the award of pre-judgment interest against the USPS in a suit under Title VII of the Civil Rights Act of 1964. *Loeffler*, 486 U.S. at 556, 108 S.Ct. 1965. While *Loeffler* notes that Congress "cast off the [USPS's] 'cloak of sovereignty' and [gave the USPS] the 'status of a private commercial enterprise,'" *id.*, the decision does not support C & W's claim that the Supreme Court intended to expose the USPS to all affirmative defenses, particularly where the defense applies to the delivery of first-class mail, a quintessentially monopolistic function of the USPS. Accordingly, the court grants the United States' motion to strike C & W's estoppel defense because the defense is insufficient as a matter of law. *Kaiser Aluminum*, 677 F.2d at 1057.[5]

(b) *Waiver and Ratification*

In its answer, C & W also asserts the defenses of waiver and ratification. Answer at 16–17, 18–19. With respect to waiver, C & W contends that the United States, through the USPS, waived its right to complain of the postal statements and payment for mail services by allegedly failing to, among other things, inspect the statements and mail submitted by the Presort Operation.[6] *Id.* at 17. C & W also avers that the United States ratified the acts at issue in this dispute. *Id.* at 18. The United States seeks to strike these defenses as legally insufficient. Motion to Strike at 6–8; Reply to Strike at 6–7. In response, C & W contends that the defenses should not be struck because they raise legal and factual questions. Response to Strike at 8–11. C & W's arguments on this point mirror its contentions on the

---

**5.** In light of this determination, the court need not address the United States' other argument that the estoppel defense, even if available, is insufficient because C & W failed to plead and establish affirmative government misconduct. Motion to Strike at 4–6; Reply to Strike 5–6.

**6.** "The elements of waiver are 1) an existing right, benefit or advantage; 2) knowledge, actual or constructive, of the existence of that right, benefit, or advantage; and 3) actual intent to relinquish the right, which can be inferred from conduct." *Niblo*, 821 F.Supp. at 451.

availability of the estoppel defense (*i.e.,* the defenses should be entertained because the allegations in this case relate to the government's "proprietary" functions and do not implicate its sovereign functions). For the reasons stated previously, however, the court concludes that the United States, through the USPS, acts in its sovereign capacity in accepting and delivering first-class mail, which is the subject of this dispute about whether C & W and the other defendants committed fraud by allegedly submitting false postage statements.

■ A violation of the rights of the United States may not be waived or ratified by the unauthorized acts of its agents. *Federal Crop Ins. Corporation v. Merrill,* 332 U.S. 380, 384 and n. 1, 68 S.Ct. 1, 92 L.Ed. 10 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); *Ferguson v. Federal Deposit Insurance Corporation,* 164 F.3d 894, 896, 899 (5th Cir.), *cert. denied,* 528 U.S. 819, 120 S.Ct. 61, 145 L.Ed.2d 53 (1999) (affirming summary judgment that defendant's affirmative defenses of waiver and ratification were not available against United States where an employee acts outside the scope of his authority); *Hicks v. Harris,* 606 F.2d 65, 69 (5th Cir.1979) ("under the relevant precedent there nevertheless can be no question of material fact as to the existence of government waiver or estoppel

that would allow [plaintiff] to recover on its claims.").

■ The United States contends that the Department of Justice ("DoJ") is the only governmental body that has authority to waive or compromise the rights of the United States at issue in this case. Motion to Strike at 7 (citing 31 U.S.C. § 3730(a) (civil actions for false claims brought by the Attorney General); 28 U.S.C. § 516 (conduct of litigation reserved to the DoJ); 28 C.F.R. Part O, Subpart I, § 0.45(d) and Subpart Y.) (reserving to the DoJ the handling of civil claims arising from fraud, including FCA and common law fraud claims). Here, the United States is suing to enforce its rights under the FCA and common law. Complaint at 1. C & W has not pled that the DoJ waived these rights. *See* Answer at 16–19. At most, C & W has alleged that the United States, through USPS employees, waived and compromised its rights by failing to inspect the mail or to monitor the trust accounts. *Id.* Consequently, as currently pled, the waiver and ratification defenses are unavailable to C & W.[7] See, *e.g., United States v. National Wholesalers,* 236 F.2d 944, 950 (9th Cir.1956) ("we do not believe that the Congress ever intended that contracting officers should have the power to vitiate the False Claims statute."), *cert. denied,* 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724 (1957).

(c) *Intervening and Supervening Causes*

■ C & W avers it should not be held liable for damages under the FCA and common law because its acts "did not prox-

---

7. The United States also notes that C & W did not dispute in its response that the DoJ is the only governmental body that could waive or ratify the United States' rights. Reply to Strike at 7. The court agrees with this characterization of C & W's response. C & W failed to cite a single case or statutory provision contradicting the United States' arguments on

this point. C & W also did not attempt to distinguish any of the authority provided by the United States. While the court was initially reluctant to dispose of some of C & W's affirmative defenses at this stage of the litigation, it now sees no reason not to do so since the defenses, as currently pled, are insufficient as a matter of law.

imately cause any injury to the USPS, due to intervening and supervening causes, which include ... the acts and omissions of Ralph Ebert, the banks involved with the checks drawn on the Trust Accounts, the acts and omissions of the USPS and its employees, and others." Answer at 19. The United States contends that this defense is unavailable because "it is legally impossible for an intervening and supervening cause to break the nexus between the false statement and the government's injury." Motion to Strike at 9 (citing 31 U.S.C. § 3729(a)(7)). The court agrees with the United States.

In its complaint, the United States asserts that C & W violated § 3729(a) by knowingly submitting false postage statements to conceal or avoid its obligation to pay postage due on the mail it submitted. Complaint at 12. Section 3729(a)(7) is known as a "reverse false claim" because it covers claims of money owed to the United States from the defendant. See *United States v. Raymond & Whitcomb Co.*, 53 F.Supp.2d 436, 444 (S.D.N.Y.1999). According to the United States, there is no possibility that any intervening or supervening cause could exist in a case such as this because the predicate conduct (C & W's obligation to pay the government and its alleged submission of false postage statements) and the resulting injury (impact on the Federal Treasury) occurred simultaneously. Motion to Strike at 9–10 (citing *Smith v. United States*, 287 F.2d

299, 303–04 (5th Cir.1961) (finding government sustained immediate damages under the FCA where lessee avoided obligation to pay rent to the United States by falsifying reports to determine rent owed)). The United States presented the court with evidence that C & W obligated itself to pay the postage due on mail it submitted through the Presort Operation. See Domestic Mail Manual, § P011.1.1 (Feb. 7, 2002), attached as Exhibit A to Motion to Strike; *see also* Motion to Strike at 10 (citing *Raymond & Whitcomb Co.*, 53 F.Supp.2d at 445–46 (stating that submission of postage statement and mail creates an obligation to pay the government for mail submitted)). Thus, if the postage statements were false, the United States suffered a loss at the time the postage statements were submitted by the defendants. See Motion to Strike at 10. Any events that occurred after the submission of the statements, therefore, are irrelevant to the issue of whether the government sustained injury because of C & W's conduct. *Id.* at 10–11. Accordingly, the court finds the defense of intervening and supervening causes is insufficient as a matter of law with respect to the United States' FCA claims.[8]

### (d) *Contributory Negligence/Comparative Fault*

■ The fifth affirmative defense asserted by C & W is contributory negligence/comparative fault. Answer at 19–

---

**8.** For the same reasons, the court agrees with the United States that the intervening and supervening causes defense is inapplicable to its claims for common law fraud because the alleged damages (providing mail services without proper compensation) occurred at the same time as the alleged fraudulent misrepresentations (presentation of the mail and corresponding postage statements). Motion to Strike at 11; *see also* Complaint at 11–12, 13 (the USPS mailed the mail at issue on receipt of the postage statements). In addition, the court finds the defense is unavailable for the

United States' claim for unjust enrichment. *Id.* at 13–14. As the United States observes, "the tort doctrine of proximate cause has no application since such a claim [of unjust enrichment] is based on a benefit received by a defendant at the expense of a plaintiff—here the provision of mailing services for which the defendants have never paid—and not on whether the conduct of the defendants somehow caused injury to a plaintiff." Reply to Strike at 7 (citing *Caton v. Leach Corporation*, 896 F.2d 939, 947 (5th Cir.1990)).

20. The United States seeks to strike this defense on the basis that it is unavailable in actions for federal common law fraud, unjust enrichment, or violation of the FCA. Motion to Strike at 11–13; Reply to Strike at 8–9. The court agrees with the United States that negligence and comparative fault are defenses only to actions grounded in negligence and are inapplicable as defenses to intentional torts such as fraud or unjust enrichment. Motion to Strike at 11–12 (citing *Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (noting fraudulent misrepresentation is an intentional tort and thus contributory negligence is not a valid defense); *In re Mercer,* 246 F.3d 391, 421 (5th Cir.2001) (en banc) ("Fraud being an intentional tort, a victim's contributory negligence is *not* a defense.") (emphasis in original)). Similarly, the court concludes that the defense is unavailable for an action brought under the FCA. See *United States v. Aerodex, Inc.,* 469 F.2d 1003, 1009 (5th Cir.1972) (finding failure of government to conduct final inspection, even where the government was obligated to do so, does not absolve the contractor of liability under the FCA); *United States v. NHC Health Care Corp.,* No. 00–3128–CV–S–4–ECF, 2000 WL 33146582, at *1 (W.D.Mo. Nov.15, 2000) (striking "contributory and/or comparative fault" defenses in FCA suit).

■ In its response, C & W argues that, under Texas law, proportionate responsibility also applies to intentional torts. Response to Strike at 12 (citing TEX. CIV. PRAC. & REM. CODE §§ 33.001 and 33.002). As the United States notes, however, those state law provisions are inapplicable to this case. Reply to Strike at 8 (citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (federal law governs where claims involve "the rights of the United States arising under nationwide federal programs.")). In addition, the FCA and unjust enrichment claims are excluded from the coverage of the Texas Proportionate Responsibility Act. Reply to Strike at 9 (citing Tex.Civ.Prac. & Rem. Code § 33.002). That statute appears to apply only to actions based on common law torts, and not to statutory causes of action, such as the FCA, or claims for unjust enrichment. See *id.*

### (e) *Unclean Hands*

■ As its sixth affirmative defense, C&W asserts the defense of unclean hands. Answer at 20. C&W alleges that the United States' unjust enrichment claim is barred by unclean hands because "[t]he USPS has not acted fairly and justly in its dealings with [C&W]." *Id.* The United States contends that case law holds that this defense is unavailable against the government in suits to vindicate the public interest. Motion to Strike at 13; Reply to Strike at 9-10 (citing *McKennon v. Nashville Banner Publishing Company,* 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (noting, in an ADEA action, that the court has rejected the defense in private suits serving important public purposes); *United States v. Second National Bank of North Miami,* 502 F.2d 535, 548 (5th Cir.1974) (principles of equity "will not be applied to frustrate the purpose of its laws or to thwart public policy") (citations omitted), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975)). C&W directs the court to several cases where the defense has been applied to actions involving the government. Response to Strike at 12-13. In addition, C&W maintains that, unlike the cases cited by the United States in its motion to strike, this case does not concern the public interest, "but rather involves a dispute that is essentially commercial in nature." *Id.* at 13-14. In reply, the United States observes

that C & W has failed to cite a single case in support of the proposition that claims under the FCA do not implicate the public interest. Reply to Strike at 9. The court agrees with the United States that the FCA is designed to protect the public from fraud and to deter fraud against the government. *Id.* (citing *Rainwater v. United States,* 356 U.S. 590, 592, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958) ("the objective of Congress [in enacting the FCA] was broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made.")). This case involves claims that the defendants were involved in a scheme to defraud the USPS by avoiding payment of $6.2 million in postage in connection with the Presort Operation. Complaint ¶ 9. As discussed previously, *see* ¶ 2(a) above, the acceptance and delivery of first-class mail impacts the public interest and fisc.

In summary, for the reasons stated above, the court grants the United States' motion to strike C & W's affirmative defenses of estoppel, waiver and ratification, intervening/supervening causes, contributory/comparative fault, and unclean hands on the ground that these defenses are insufficient as a matter of law.

### B. *Motion to Dismiss Counterclaims*

C & W has asserted counterclaims against the United States and the USPS, based on its contractual and business relationship with the USPS, for (1) negligence, (2) negligent supervision, (3) negligent monitoring and entrustment, (4) breach of contract and trust, (5) breach of bailment duties, (6) conversion, and (7) recoupment and offset. Counterclaims at 10–15. In the counterclaims, C & W contends that the United States is liable for failing to prevent the submission of false statements as to the amount of mail tendered for delivery and for giving "to a rogue employ-

ee" refund checks made out to C & W. Response to Dismiss at 2. The United States moves to dismiss these counterclaims.

### 1. *Standard for Dismissal Under Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi,* 143 F.3d 1006, 1010 (5th Cir.1998) (internal citation and quotation omitted). A party attempting to invoke federal court jurisdiction bears the burden of establishing that jurisdiction. *Langley v. Jackson State University,* 14 F.3d 1070, 1073 (5th Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 61, 130 L.Ed.2d 19 (1994). Dismissal for lack of subject matter jurisdiction "is only proper when it appears certain that the [counterclaimant] cannot prove any set of facts in support of [its] claims that would entitle [it] to relief." *McAllister v. Federal Deposit Insurance Corporation,* 87 F.3d 762, 765 (5th Cir. 1996) (internal citation and quotation omitted). In ruling on this motion to dismiss for lack of subject matter jurisdiction, the court may rely on (1) the counterclaims alone; (2) the counterclaims supplemented by undisputed facts; or (3) the counterclaims supplemented by undisputed facts plus the court's resolution of disputed facts. *McAllister,* 87 F.3d at 765 (citation omitted).

### 2. *Standard for Dismissal Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a counterclaim for "failure to state a claim upon which relief can be granted." However, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the counterclaimant could prove no set of facts in support of its claims that would entitle it

to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leffall v. Dallas Independent School District,* 28 F.3d 521, 524 (5th Cir.1994); *see also Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (citing 5A WRIGHT & MILLER, Federal Practice and Procedure: Civil § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In determining whether dismissal should be granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the counterclaimant. See *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.,* 30 F.3d 627, 629 (5th Cir.1994); *Norman v. Apache Corporation,* 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare,* 925 F.2d 844, 846 (5th Cir.1991).

### 3. *Grounds for Dismissal*

The United States has advanced eight different arguments in support of dismissing C & W's counterclaims.[9] In response, C & W argues that "[t]he motion to dismiss should be denied because this Court has jurisdiction over the counterclaims, which state viable causes of action under federal and state law which are not subject to exclusive jurisdiction elsewhere or any sovereign immunity exception to suit." Response to Dismiss at 1. In its reply, the United States focuses on what it considers to be "the most fundamental points requiring dismissal." Reply to Dismiss at 1.[10]

#### (a) *Breach of Contract and Trust and Breach of Bailment Duties (Counterclaims 4 and 5)*

■ C & W alleges that the United States can be held liable for breaching its contractual duties, including failing to investigate the postal statements submitted and failing to ensure that charges for postal services were properly calculated and deducted from the trust accounts, *see* Counterclaims at 13, as well as breaching its bailment duties. *Id.* at 14. The United States contends that these counterclaims should be dismissed for lack of jurisdiction because, under the Tucker Act, 28 U.S.C. §§ 1491(a)(1) and 1346(a)(2), they are with-

---

**9.** As summarized by the United States, C & W's counterclaims should be dismissed for the following reasons:

> First, the counterclaims improperly seek contribution or indemnity for [FCA] damages. Second, the tort counterclaims are not within the limited waiver of sovereign immunity of the Federal Tort Claims Act (FTCA) because [C & W's] allegations do not give rise to an actionable tort duty owed to [C & W] under Texas state law. Third, [C & W's] claims based on breach of express and implied contractual obligations are jurisdictionally barred because they can only be brought in the Court of Federal Claims. Fourth, because the tort counterclaims are not compulsory they are barred by [C & W's] failure to comply with the FTCA's exhaustion requirements. Fifth, the tort counterclaims are further barred by sovereign immunity because they fall within specific exceptions to the FTCA. Sixth, the

> counterclaims are not proper recoupment claims. Seventh, [C & W's] claim for attorney's fees is also barred by sovereign immunity. Finally, the [USPS] cannot be sue as a 'counter-defendant' because it is not the plaintiff here.

Motion to Dismiss at 2–3.

**10.** The court notes that its resolution of the motion to dismiss was unnecessarily complicated by what it considers to be the poor organizational structure of the motion to dismiss, response, and reply briefs. For instance, the United States did not separately identify each counterclaim and ground for dismissal. Rather, the United States lumped the counterclaims together and advanced numerous arguments for dismissal. While the court understands the United States' desire to advance all potential grounds for dismissal, it might have exercised more care in structuring those arguments for the court's consideration.

in the exclusive jurisdiction of the Court of Federal Claims. Motion to Dismiss at 11–12.[11] C & W responds that the Tucker Act does not bar these counterclaims because (1) the court has jurisdiction, as the claims are asserted against the USPS and (2) the court may exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367. Response to Dismiss at 12–13 and accompanying footnotes.

The court agrees with the United States that C & W's counterclaims alleging breach of contract and breach of bailment duties are barred by the Tucker Act. Section 1491(a)(1) grants the Court of Federal Claims exclusive jurisdiction for damages against the United States which exceed $10,000. *See* 28 U.S.C. § 1491(a)(1)(providing that the court of federal claims has exclusive jurisdiction over claims against the United States in excess of $10,000 based "upon any express or implied contract with the United States."). Section 1346(a)(2) waives sovereign immunity for contract claims in this court, but only to the extent such claims are for compensation not exceeding $10,000. 28 U.S.C. § 1346(a)(2). These limitations generally apply equally to claims and counterclaims. *See* FED. R. CIV. P. 13(d). Since C & W's breach of contract and bailment claims arises out of a contract with the United States, and since C & W seeks to recover more than $10,000, these claims are barred and therefore must be dismissed. 28 U.S.C. § 1491(a)(1); *Kosak v. United States*, 465 U.S. 848, 860 n. 22, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (noting that a suit based on implied-in-fact contract of bailment is cognizable under the Tucker Act.). Moreover, the court concludes that

it cannot exercise supplemental jurisdiction over these claims through a limited waiver of sovereign immunity. See, *e.g,* *Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation v. United States*, 22 F.3d 741, 744 (7th Cir.1994) (holding "an express limitation embodied in the Tucker Act cannot be overcome by supplemental jurisdiction . . . Section 1367 cannot override this exclusive jurisdiction.").

The court also concludes it cannot exercise jurisdiction over the contract and bailment claims on the basis that those claims are asserted against the USPS. As the United States notes, the USPS is not the plaintiff in this action. Reply to Dismiss at 3; Motion to Dismiss at 25. Accordingly, the USPS cannot be sued on these counterclaims because a counterclaim can only be brought against an "opposing party." [12] *See* FED. R. CIV. P. 13(a); *Federal Savings and Loan Insurance Corporation v. Burdette*, 696 F.Supp. 1183, 1188 (E.D.Tenn.1988) ("The assertion of what is alleged to be a compulsory counterclaim requires that the counter-defendant and the plaintiff be the same entity.").

(b) *Negligence, Negligent Supervision, Negligent Monitoring and Entrustment, Conversion, Recoupment and Offset (Counterclaims 1, 2, 3, 6 and 7)*

C & W also assert various tort counterclaims against the United States. Counterclaims at 10–13, 15. The United States seeks to dismiss these tort counterclaims on three grounds. First, the tort counterclaims are not within the limited waiver of sovereign immunity of the FTCA because

---

11. The United States also seeks dismissal of C & W's conversion claim on this basis. Motion to Dismiss at 11. In support of dismissing the bailment claim, the United States argues that C & W's "bailment claim and any conversion claim predicated on the alleged bailment are necessarily predicated on the govern-

ment's failing to perform obligations imposed by a bailment agreement." *Id.* at 11–12.

12. The court makes this finding notwithstanding C & W's contention that the USPS is the "true party in interest." Response to Dismiss at 14 n.12 and 23–24.

C & W's allegations do not state an actionable tort duty under Texas law. Motion to Dismiss at 4–11; Reply to Dismiss at 3–9. Second, because the tort counterclaims are not compulsory, they are barred by C & W's failure to comply with the FTCA's exhaustion requirements. Motion to Dismiss at 12–17; Reply to Dismiss at 9. Third, the tort counterclaims are further barred by sovereign immunity because they fall within the specific exceptions to the FTCA. Motion to Dismiss at 17–22. The court will briefly address each of these arguments.

Under the FTCA, sovereign immunity is waived only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Where no actionable duty exits under state law, an FTCA case is subject to dismissal because there has been no waiver of sovereign immunity. *Leleux v. United States*, 178 F.3d 750, 759 (5th Cir. 1999) ("[T]he relevant question under the FTCA is whether a state-law duty exists, not whether a court can create or 'recognize' one."). Here, the United States argues that C & W's "counterclaims are barred because the United States owed no actionable tort duty to [C & W] to prevent it from defrauding the United States or to prevent [C & W's] agent from stealing from the United States or [C & W]." Motion to Dismiss at 5. In support of this claim, the United States argues that C & W has failed to cite any support for its claim that Texas law imposes tort duties of this nature. *Id.* at 5–6. Reply to Dismiss at 3–7.

Based on the pleadings before it, the court concludes that C & W has sufficiently pled, under FED. R. CIV. P. 8(a), claims for negligence, negligent supervision, negligent monitoring and entrustment, conversion, and recoupment and offset. In de-

termining whether dismissal should be granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the claimant. See *Capital Parks, Inc.*, 30 F.3d at 629. In this instance, the court agrees with C & W that the United States has unfairly characterized the tort counterclaims. Response to Dismiss at 5–6. The United States' argument for dismissal on this basis is better suited to resolution on a motion for summary judgment than a motion to dismiss.

■■■ The court also rejects the United States' argument that C & W's counterclaims are not compulsory. The United States contends the C & W's tort counterclaims are not compulsory because "they involve different evidence, different types of claims, and different events than the government's fraud action." Reply to Dismiss at 9. Rule 13(a) of the Federal Rules of Civil Procedure governs compulsory counterclaims. Specifically, the rule provides that a claim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a). A counterclaim is compulsory if any one of the following four tests is met: "(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and counterclaim." *Park Club Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992). "An affirmative answer to any of the four questions indicates the counterclaim is compulsory." *Id.*

(internal quotation and citation omitted). The court concludes that the fourth test is met in this case because there is a logical relationship between the complaint and counterclaim. See, *e.g., Plant v. Blazer Financial Services, Inc. of Georgia,* 598 F.2d 1357, 1361 (5th Cir.1979). Specifically, the facts and circumstances concerning the United States' FCA and common law fraud claims appear to overlap with C & W's tort counterclaims.

■ Finally, the court concludes that the "postal matter" exception contained in 28 U.S.C. § 2680(b) does not bar C & W's tort counterclaims. That statute provides that the United States is not liable for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). In the motion to dismiss, the United States argues that C & W's "claims are essentially predicated on the actions of the USPS in accepting the mail for delivery notwithstanding that Postage Statements did not properly account for the amount of mail tendered for delivery." Motion to Dismiss at 17. In response, C & W argues that while the USPS retains sovereign immunity for claims relating to ordinary mishaps with the mail, this case "involves problems unrelated to the actual delivery of mail to the ultimate recipient." Response to Dismiss at 17–18. The court agrees with C & W that as currently pled, the negligence and conversion counterclaims do not appear to be encompassed by the "postal matter" exception. *Id.* at 18.

### III. *CONCLUSION*

For the reasons stated above, the United States' motion to strike the affirmative defenses of C & W is **GRANTED,** and the United States' motion to dismiss the counterclaims of C & W is **GRANTED** with respect to C & W's claims for breach of contract and trust and breach of bailment duties but is otherwise **DENIED.**[13]

**SO ORDERED.**

---

**13.** The court reserves decision on the United States' contention that C & W's counterclaims are barred because they seek contribution or indemnity for FCA liabilities. Motion to Dismiss at 3–4; Reply to Dismiss at 9–10. C & W argues that the counterclaims are not barred because (1) the United States also asserts claims for common law fraud and unjust enrichment, and (2) the counterclaims do not turn on any alleged liability of C & W under the FCA. Response to Dismiss at 3–4. In addition, at this stage of the proceedings, the court finds that C & W has stated a claim for recoupment. *See* Motion to Dismiss at 22–24; Response to Dismiss at 22–23.